436 F.Supp. 335 (1977)
NATIONAL LABOR RELATIONS BOARD, Plaintiff,
v.
STATE OF NEW YORK, Louis J. Lefkowitz, as Attorney General of the State of New York, and Robert P. Whalen, M.D., as Commissioner of Health of the State of New York, Defendants.
No. 76 C 1656.
United States District Court, E. D. New York.
August 22, 1977.
*336 John S. Irving, Gen. Counsel, N.L.R.B., by Janet C. McCaa, and Margery E. Lieber, Washington, D. C., and Harold L. Richman, Regional Atty., Region 29, N.L.R.B., Brooklyn, N.Y. for plaintiff.
Louis J. Lefkowitz, Atty. Gen., by Allan N. Smiley, and Jesse P. Reisner, New York City, for defendants.
NEAHER, District Judge.
The issue in this case is whether the National Labor Relations Act ("NLRA"), as amended in 1974, preempts State authority to act in regard to labor relations in the hospital and nursing home field and thus requires this court to enjoin the further enforcement of State orders which have prohibited and restrained organized employees of nursing homes in Nassau and Suffolk Counties from exercising their right to strike.

I.
The facts which have given rise to this controversy between the National Labor Relations Board ("NLRB") and the State of New York are not in dispute. In collective bargaining agreements effective January 1, 1975 between Local 1115, Joint Board, Nursing Home and Hospital Employees Division ("Local 1115" or "union") and twenty proprietary nursing homes in Nassau and Suffolk Counties, the employers agreed, inter alia, to increase wages and benefits on January 1, 1976. On December 15, 1975 the employers notified Local 1115 that, because the State of New York had refused to increase its Medicaid reimbursement rate over the 1975 level, they would be unable to pay the increases due January 1, 1976. Within the next three weeks Local 1115 filed unfair labor practice charges with the NLRB and announced its intent to strike beginning January 21, 1976.
In response to the threat of a strike the State Commissioner of Health issued orders on January 19 and 21, 1976 prohibiting Local 1115 and its members from engaging in strikes, picketing or any other form of interference with the operations of the nursing homes.[1] The Commissioner also requested that the State Attorney General apply for injunctive relief.
On January 21 the Attorney General, pursuant to Public Health Law § 12(5), filed a complaint against Local 1115 in the Supreme Court, Suffolk County.[2] On the *337 same day the State court granted the State's request for a temporary order restraining strike activity pending a hearing on a preliminary injunction. On February 5, 1976 the State court granted a preliminary injunction against any strike action, as it found that "[n]ot to grant this relief would cause tremendous suffering to the thousands of residents of the nursing homes and would disrupt the entire system." The court denied a preliminary injunction against picketing.
On February 20, 1976 Local 1115 removed the action to this court. It argued that the State was seeking to enjoin activities which are exclusively regulated by the NLRA. Upon the State's motion, this court remanded the action on April 23, 1976 on the ground that the complaint stated a claim solely under State law. The court concluded:
"Whether the Union's preemption contention is correct should be decided as a matter of defense in the State courts in the first instance, with ultimate recourse to the Supreme Court. State courts are obliged under the Supremacy Clause to follow federal law where applicable and there is no reason to believe that they are unwilling or incapable of so doing". State of New York v. Local 1115, 412 F.Supp. 720, 724 (E.D.N.Y.1976).
On remand the union appealed the granting of the preliminary injunction. On March 14, 1977 the Appellate Division, Second Department, in a 3-2 decision, rejected the union's preemption argument and affirmed the preliminary injunction.
Meanwhile the NLRB began to assert its authority over the dispute. On May 3, 1976, pursuant to charges filed by Local 1115 on December 30, 1975, the Regional Director issued a consolidated amended complaint against the nursing home employers. Following a hearing on June 22-23, 1976, an administrative law judge found the employers guilty of unfair labor practices and ordered them to cease and desist. This order, issued on November 18, 1976, was adopted by the NLRB on January 28, 1977.
In addition, the NLRB instituted the present action on September 8, 1976 to enjoin the State from restraining the strike activity of Local 1115.[3] Also sought is a declaratory judgment that labor relations in the nursing home field are within the exclusive jurisdiction of the NLRB and that State authority is preempted by the NLRA. The matter is now before the court on the Board's motion to preliminarily enjoin the State and its officials from prosecuting the State court action against Local 1115, enforcing the preliminary injunction issued in that action, or in any way attempting to regulate conduct which is within the Board's exclusive jurisdiction.

II.
The State first seeks to avoid the preemption issue by arguing that this action should not be entertained because it is a collateral attack on the court's remand order in State of New York v. Local 1115, supra. Review of an order of remand is prohibited on appeal or otherwise. 28 U.S.C. § 1447(d).
The State's contention, while tempting, cannot be sustained. The Board in this action does not seek to question the propriety of the remand order. In the prior action the Board was not a party[4] and the court had no opportunity to consider the question of the Board's exclusive jurisdiction over *338 labor relations in the nursing home field. Consequently, the maintenance of this action in federal court does not circumvent the proscriptions of § 1447(d). See Rath Packing Co. v. Becker, 530 F.2d 1295, 1303 (9 Cir. 1975), aff'd, 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977).
Turning now to the preemption issue, the court recognizes that the Supreme Court has established the following general rule:
"When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield. To leave the States free to regulate conduct so plainly within the central aim of federal regulation involves too great a danger of conflict between power asserted by Congress and requirements imposed by state law." San Diego Building Trades Council v. Garmon, 359 U.S. 236, 244, 79 S.Ct. 773, 779, 3 L.Ed.2d 775 (1959).
This rule, reaffirmed in numerous cases, including the recent case of Farmer v. United Brotherhood of Carpenters and Joiners of America, Local 25, 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977), does have certain exceptions. The exception most relevant to the present action was expressed in Garmon itself, where the Supreme Court announced that the preemption doctrine does not apply to activity which
"touched interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act." Garmon, 359 U.S. at 243, 79 S.Ct. at 779.
In determining the applicability of this exception, the court must examine the State interests in regulating the activity at issue and the potential for interference with the federal regulatory scheme. Farmer v. United Brotherhood of Carpenters and Joiners of America, Local 25, supra, 430 U.S. at 297, 97 S.Ct. at 1062.
The State's primary concern is to protect and promote the health of its inhabitants. An interest more "deeply rooted in local feeling and responsibility" would be difficult to find. Since residents of nursing homes are among the weakest and most vulnerable members of society, the New York State legislature empowered the Commissioner of Health to supervise and regulate the operation and management of nursing homes. See, e. g., N.Y. Public Health Law §§ 2801, 2808, 2895. When the strike announcement by Local 1115 appeared to pose an immediate threat to the health and lives of the affected nursing home residents, the State, seeing no alternative, obtained a preliminary injunction against the strike.
Unfortunately, the preliminary injunction directly interferes with the union's right to strike, which is protected by § 7 of the NLRA. In Automobile Workers v. O'Brien, 339 U.S. 454, 457, 70 S.Ct. 781, 94 L.Ed. 978 (1950), the Supreme Court considered the question of concurrent State regulation of peaceful strikes for higher wages and declared: "Congress occupied this field and closed it to state regulation."
Congress gave nursing home employees the right to strike in 1974, when it amended the National Labor Relations Act to extend coverage of the Act to some 1,400,000 employees of "health care institutions."[5] Congress clearly intended to grant these employees a federally guaranteed right to strike, with only minimal restrictions attached. They must give 10 days notice of their intent to strike. 29 U.S.C. § 158(g). If a dispute arises during bargaining for an initial agreement following certification or recognition, they must give thirty days notice of the existence of the dispute. 29 *339 U.S.C. § 158(d)(B). The Director of the Federal Mediation and Conciliation Service may establish a Board of Inquiry to investigate a dispute and report to the parties its recommendations for settling the dispute. 29 U.S.C. § 183(a). The status quo must be maintained until 15 days after the Board of Inquiry issues its report. 29 U.S.C. § 183(c).
There can be little doubt that the impact of the 1974 amendments on State labor jurisdiction was considered by Congress. See, e. g., 119 Cong. Rec. S6991 (daily ed. May 2, 1974), in which Senator Mondale recognized that State regulation would have to give way to the federal law. In the House an amendment that would have insulated State laws from preemption under the new amendments was defeated. 119 Cong. Rec. H4599 (daily ed. May 30, 1974).
The State argues that, should these employees be permitted to strike, the health and welfare of the nursing home residents would be seriously jeopardized. While this appears to be true, Professor Cox has correctly stated that
"where § 7 guarantees employees the right to engage in concerted activities, the guarantee applies to nearly all peaceful primary strikes and picketing in support of normal collective bargaining objectives even when they occur in a dispute threatening to cut off essential public services." Cox, Labor Law Preemption Revisited, 85 Harv.L.Rev. 1337, 1340 (1972).
The only remaining issue, therefore, is whether injunctive relief is appropriate to bar further action by the State in this matter.
Despite the general prohibition against the use of federal injunctions to interfere with State court proceedings, 28 U.S.C. § 2283, the Supreme Court has held that the National Labor Relations Board has implied authority to enjoin State proceedings where federal power preempts the field. N.L.R.B. v. Nash-Finch Co., 404 U.S. 138, 144, 92 S.Ct. 373, 30 L.Ed.2d 328 (1971); see also Mitchum v. Foster, 407 U.S. 225, 235-36, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972). Since State regulation of the right of nursing home employees to strike is preempted by the 1974 amendments to the NLRA, the court has no alternative but to grant the NLRB's request for a preliminary injunction against all State proceedings, including the preliminary injunction issued in State court, insofar as they seek to regulate the employees' right to strike.
Given the vulnerable state of the residents of nursing homes should there be a cessation of services by those who are charged with their care, note must be taken that NLRA supremacy over the economic rights of unionized employees does not strip the State of its residual powers to protect the lives and health of those residents. While the State may not prohibit the employees from going out on strike or engaging in peaceful picketing, when it appears that the lives and health of nursing home residents are threatened, the State remains free, in the exercise of its local responsibility, to take whatever reasonable steps are necessary to protect the residents from the effects of strike activity.
At this juncture, however, the court need only decide that State regulation of the right of nursing home employees to strike is preempted by the NLRA as amended. Accordingly, the NLRB's motion for a preliminary injunction is granted. Settle form of order on notice.
SO ORDERED.
NOTES
[1] In issuing the orders the Commissioner relied on Article XVII, Sec. 3 of the State Constitution ("The protection and promotion of the health of the inhabitants of the state are matters of public concern and provision therefor shall be made by the state"), Article 28 of the Public Health Law (dealing with hospitals), and § 206 of the Public Health Law ("1. The commissioner shall: (a) take cognizance of the interests of health and life of the people of the state . . ..").
[2] Public Health Law § 12(5) provides:

"It shall be the duty of the attorney general upon the request of the commissioner to bring an action for an injunction against any person who violates, disobeys or disregards any term or provision of this chapter or of any lawful notice, order or regulation pursuant thereto . . .."
[3] The NLRB reports that, since the preliminary injunction was issued, the employers have made the required payments into the welfare and legal service funds, thereby removing the immediate threat of a strike. The initial failure to make the payments, however, has not been rectified.

Despite the absence of an imminent strike, this action is not moot. The State court preliminary injunction is still in effect. This paralyzes the employees' right to strike and infringes on the NLRB's exclusive jurisdiction.
[4] A board representative did participate in the oral argument on the motion to remand, but his participation was minimal. This does not foreclose the Board from proceeding with the present action. See United States v. California, 381 U.S. 139, 175 n.49, 85 S.Ct. 1401, 14 L.Ed.2d 296 (1965).
[5] Section 2(14) defines a "health care institution" as

"any hospital, convalescent hospital, health maintenance organization, health clinic, nursing home, extended care facility, or other institution devoted to the care of sick, infirm or aged person." 29 U.S.C. § 152(14).