868 F.2d 391
 130 L.R.R.M. (BNA) 3018, 57 USLW 2558,
111 Lab.Cas. P 11,043
 NATIONAL LABOR RELATIONS BOARD, Plaintiff-Appellee,
v.
STATE OF FLORIDA, DEPARTMENT OF BUSINESS REGULATION,
DIVISION OF PARI-MUTUEL WAGERING, Defendants-Appellants,
National Association of Jai Alai Frontons, Inc., Intervenor.
 No. 88-3385.
 United States Court of Appeals,
Eleventh Circuit.
 March 20, 1989.
As Amended April 10, 1989.
 
 W. Douglas Moody, Jr., Dept. of Business Regulation, Tallahassee, Fla., for defendants-appellants.
 Susan Potter Norton, Donald T. Ryce, Jr., Coral Gables, Fla., for intervenor.
 Margery E. Lieber, Asst. Gen. Counsel for Special Litigation, NLRB, Corinna L. Metcalf, Washington, D.C., for plaintiff-appellee.
 Appeal from the United States District Court For the Northern District of Florida.
 Before RONEY, Chief Judge, HATCHETT, Circuit Judge, and HENDERSON, Senior Circuit Judge.
 HATCHETT, Circuit Judge.
 
 
 1
 The State of Florida, Department of Business Regulation, Division of Pari-Mutuel Wagering (Division) and the National Association of Jai Alai Frontons (Fronton Owners) seek to reverse the district court's grant of a preliminary injunction. The injunction enjoins the Division and the Fronton Owners from (1) enforcing a state court order against player-members and (2) applying a Florida administrative rule which requires the Association and its members to give fifteen days notice before striking. We affirm.
 
 FACTS
 
 2
 Under Florida law, the Division regulates the pari-mutuel industries: jai-alai, dog racing, and horse racing. The Division has promulgated extensive regulations governing the conduct of jai-alai licensees and players. One regulation requires the jai-alai players to give the Division and the Fronton Owners fifteen days notice before striking. See Florida Administrative Code, Rule 7E-3.003(34)(b) (1986).*
 
 
 3
 The Association's efforts to unionize the jai alai players in eight Florida frontons prompted this action. On March 11, 1988, the Association filed representation petitions with the National Labor Relations Board (NLRB) to become the exclusive bargaining representative for jai alai players in various Florida frontons. The Association then filed unfair labor practice charges against the Fronton Owners, claiming that the owners threatened the players with discharge, license revocation, or deportation if they did not cease their union activities.
 
 
 4
 On March 28, 1988, the Division sought injunctive relief in a Florida state court after learning that the players intended to strike without giving the Division or the Fronton Owners the required fifteen-day notice. The state court granted the Division a temporary restraining order which enjoined the Association and its members from striking before either the state court resolved the case or the Association complied with the fifteen-day notice requirement. Florida v. Int'l Jai Alai Assoc., No. 88-1082 (Leon County Cir.Ct. March 28, 1988). The state court based its decision on a finding that "a surprise strike would pose an imminent danger to the betting public." Int'l Jai Alai Assoc., No. 88-1082 (Leon County Cir.Ct. March 28, 1988).
 
 PROCEDURAL HISTORY
 
 5
 On April 7, 1988, the NLRB filed suit in the District Court for the Northern District of Florida, seeking to enjoin the Division from enforcing the state court's order and from applying the fifteen-day notice rule to the Association or its members. On April 14, 1988, the district court issued a temporary restraining order granting the NLRB its requested relief. The Association commenced a strike shortly after the district court granted the temporary restraining order.
 
 
 6
 On April 22, 1988, after granting the Fronton Owner's motion to intervene, the district court held a preliminary injunction hearing. On April 28, 1988, the district court issued a preliminary injunction against the Division and the Fronton Owners. The district court found that the NLRB established the four necessary elements for a preliminary injunction: (1) a substantial likelihood that the NLRB would prevail on the merits; (2) a substantial threat that the NLRB would suffer irreparable harm without the injunction; (3) the NLRB's potential injury outweighs the injunction's potential harm to the Division and the Fronton Owners; and (4) the preliminary injunction will not adversely impact the public interest. See Canal Authority of State of Florida v. Callaway, 489 F.2d 567 (5th Cir.1974) (establishing the four prerequisites for granting a preliminary injunction).
 
 
 7
 The district court determined that the NLRB would likely prevail on the merits because the NLRB's primary jurisdiction in labor matters preempted the Division's fifteen-day notice requirement. The court based its preemption decision on the conclusion that Florida's notice provision directly conflicted with the employees' protected right to strike. See National Labor Relations Act Sec. 7, 29 U.S.C. Sec. 157 (1973).
 
 
 8
 The district court also concluded that the NLRB satisfied the remaining three elements for a preliminary injunction. The court found that the fifteen-day notice provision would irreparably injure the NLRB by significantly interfering with its jurisdiction and effectively nullifying the players' protected right to strike. Balancing the hardships, the court determined that the injunction would not harm the state, and therefore the NLRB's injury outweighed the state's potential injury. Finally, the district court concluded that the injunction would not harm the public because the injunction did not prohibit the state from using its police powers to protect the public from threatened or actual violence.
 
 
 9
 Consequently, the district court enjoined the Division and the Fronton Owners from enforcing the state court order and from applying the fifteen-day rule to the Association or its members.
 
 CONTENTIONS
 
 10
 The Division and the Fronton Owners contend that the district court abused its discretion in granting a preliminary injunction because the NLRB cannot demonstrate a likelihood of success on the merits. According to the Division and the Fronton Owners, the NLRB will not succeed on the merits because Section 7 of the National Labor Relations Act (NLRA), which creates the right to strike, does not preempt Florida's fifteen-day notice provision: (1) the notice requirement does not eliminate the right to strike, and alternatively, (2) Florida's police powers authorize it to regulate the jai alai players' strike conduct because the strike will likely endanger the public.
 
 
 11
 In contrast, the NLRB contends that because the NLRA clearly preempts state regulation of the right to strike, the district court did not abuse its discretion in granting the preliminary injunction.
 
 ISSUE
 
 12
 The issue: whether the district court abused its discretion by granting a preliminary injunction which enjoined the Division and the Fronton Owners from enforcing the state court order and from applying the fifteen-day notice provision to the Association or its members.
 
 DISCUSSION
 A. NLRA Preemption
 
 13
 Although section 7 of the NLRA does not expressly preempt state regulation of all labor-management relations, the Supreme Court has held that it preempts state laws which conflict with employees' conduct protected under section 7 of the NLRA. See, e.g., Motor Coach Employees v. Missouri, 374 U.S. 74, 83 S.Ct. 1657, 10 L.Ed.2d 763 (1963) (section 7 of NLRA preempts state statutes which effectively prohibited peaceful strikes against public utilities), reh'g denied, 375 U.S. 870, 84 S.Ct. 29, 11 L.Ed.2d 100 (1963). This court has similarly recognized this general rule. See Board of Trustees v. Universal Enterprises, 751 F.2d 1177, 1183 (11th Cir.1985) (courts must yield to NLRB's primary jurisdiction in adjudicating activity which section 7 arguably protects).
 
 
 14
 The Supreme Court's rationale for this conclusion focuses on congressional intent. According to the Court, when Congress enacted the NLRA it did more than create a substantive rule of law for any tribunal to apply; Congress granted the NLRB primary jurisdiction over this rule by "prescrib[ing] a particular procedure for investigation, complaint and notice, and hearing and decision." Garner v. Teamsters Union, 346 U.S. 485, 490-91, 74 S.Ct. 161, 165-66, 98 L.Ed.2d 228 (1953). Because Congress created a centralized administrative agency, with its own procedures, specialized knowledge, and cumulative experience, Congress intended to give the NLRB exclusive jurisdiction, preempting state regulation which conflicts with the employees' rights under the NLRA. San Diego Building Trades Council v. Garmon, 359 U.S. 236, 242, 79 S.Ct. 773, 778, 3 L.Ed.2d 775, 781 (1959).
 
 
 15
 Although section 7 does not explicitly establish the right to strike, the courts have interpreted it to include such right. Section 7 of the NLRA provides:
 
 
 16
 Employees shall have the right to self-organization, to form, join or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection....
 
 
 17
 National Labor Relations Act Sec. 7, 29 U.S.C. Sec. 157 (1972). The courts have concluded that the language "other concerted activities" encompasses the right to strike. See NLRB v. Drivers, Chauffeurs, Helpers, Local Union No. 639, 362 U.S. 274, 279, 80 S.Ct. 706, 709, 4 L.Ed.2d 710 (1960); Garmon, 359 U.S. at 241, 79 S.Ct. at 777, 3 L.Ed.2d at 780. Moreover, the Supreme Court has stated: "[c]ollective bargaining, with the right to strike at its core, is the essence of the federal scheme." Motor Coach Employees, 374 U.S. at 82, 83 S.Ct. at 1662, 10 L.Ed.2d at 768. Thus, section 7 preempts states from regulating the strike conduct of groups over which the NLRB has asserted jurisdiction.
 
 
 18
 The NLRB has taken jurisdiction over jai alai players since 1975. Florida Board of Bus. Regulation v. NLRB, 686 F.2d 1362, reh'g denied, 694 F.2d 727 (11th Cir.1982). After considering all aspects of the jai alai industry, including the intrusive state regulation, the NLRB favored asserting jurisdiction over the jai alai players. As a result, the NLRB has primary jurisdiction over the jai alai players' right to strike.
 
 
 19
 The Division and the Fronton Owners contend, however, that the fifteen-day notice provision does not affect the players' right to strike. The Division and the Fronton Owners argue that the NLRB failed to demonstrate that the fifteen-day notice provision amounts to a pre-strike notice requirement which nullifies the economic impact of the strike. This contention has no merit. A strike's effectiveness primarily depends on its economic strength. Fifteen days notice provides the Fronton Owners with sufficient time to replace the players before a strike commences, eliminating any economic impact on the Fronton Owners. Without any economic impact, such a strike serves no purpose. Under these circumstances, the notice provision nullifies the players' protected right to strike.
 
 
 20
 Even the Division has implicitly admitted that the fifteen-day notice provision undercuts a strike's effectiveness. The Division argues that it properly enacted the notice rule under Florida's general police powers to avoid large revenue losses. The Division bases this loss of revenue argument on the premise that the fifteen-day notice will allow sufficient time to avoid a strike and any resulting revenue loss.
 
 
 21
 The Fronton Owners argue that an NLRB decision supports its position that a notice requirement does not eliminate the right to strike. See General Portland, Inc. v. Cement, Lime, Gypsum Allied Workers Division of Int'l Brotherhood of the Boilermakers, 283 NLRB No. 133 (1987). In General Portland, the NLRB affirmed an administrative law judge's decision that a three-day notice provision in an agreement between the parties constituted a reasonable time period. This decision does not support the Fronton Owners' position, but rather merely reaffirms the NLRB's exclusive right to regulate strike conduct absent an emergency situation.
 
 
 22
 The Frontons also argue that some judicial authority recognizes that a notice provision does not inherently destroy the right to strike. See NLRB v. New York, 436 F.Supp. 335, 338 (E.D.N.Y.1977), aff'd, 591 F.2d 1331 (2d Cir.1978), cert. denied, 440 U.S. 950, 99 S.Ct. 1431, 59 L.Ed.2d 639 (1979). In NLRB v. New York, New York's attorney general obtained a state court restraining order which enjoined nursing home employees from striking. The district court held that the temporary restraining order interfered with the employees' protected right to strike. The district court commented that Congress could place minimal restrictions on the right to strike, such as a ten-day notice requirement. Contrary to the Fronton Owners's position, we agree with the NLRB that this decision again simply indicates that under the NLRA, Congress has the authority to impose such a rule even if it affects the right to strike.
 
 
 23
 Therefore, we conclude that the notice provision effectively eliminates the jai alai players' right to strike in direct conflict with section 7 of the NLRA.
 
 B. State's General Police Power
 
 24
 The Division and the Fronton Owners contend that even if the notice provision interferes with the players' right to strike, the state lawfully adopted the rule to protect the public welfare. The NLRB concedes that Florida's police powers allow it to enjoin strike conduct under exigent circumstances. The NLRB contends, however, that the Division and the Fronton Owners have not established the requisite actual or imminent public danger to justify such state action. We agree with the NLRB that no emergency circumstances exist to support the notice provision.
 
 
 25
 The courts have strictly limited state regulation of strike conduct to emergency situations where a strike has caused violence or will inevitably harm the public welfare. See United A.A. & A.I.W. v. Wisconsin Employment Relations Board, 351 U.S. 266, 76 S.Ct. 794, 100 L.Ed. 1162 (1956) (state labor board could enjoin mass picketing which obstructed access to plant, prevented workers from entering plant, and threatened working employees with physical injury); see also Youngdahl v. Rainfair, 355 U.S. 131, 78 S.Ct. 206, 2 L.Ed.2d 151 (1957) (state court could enjoin conduct which state court found calculated to provoke violence and likely to do so unless promptly restrained). Thus, a state's police powers only allow it to react to existing emergency circumstances by enjoining strike conduct. The Division claims that its notice provision is necessary because a strike interrupting pari-mutuel performances would certainly cause violence. As support for this assertion, the Division relies on a fronton owner's affidavit describing a nearly chaotic situation in 1971 that resulted from the interruption of a jai alai match. We agree with the district court that this affidavit does not provide sufficient evidence of inevitable violence or public harm. In fact, since the strike has occurred, the Fronton Owners cannot point to any resulting violence or harm to public safety. This lack of violence buttresses our conclusion.
 
 
 26
 Because the Fronton Owners and the Division have not demonstrated actual or threatened imminent public harm, the notice provision constitutes an improper precautionary regulation of the section 7 right to strike. Case law clearly prohibits states from exercising their police powers to regulate strike conduct prior to the existence of actual or imminent danger or injury to the public. For example, the Supreme Court held that the NLRA preempted a Missouri law which allowed the governor to seize a public transit company and enjoin the employees from striking. Motor Coach Employees, 374 U.S. at 82, 83 S.Ct. at 1662, 10 L.Ed.2d at 768. The Court concluded that the NLRA preempted the seizure law because the law allowed Missouri to prohibit a peaceful strike. Motor Coach Employees, 374 U.S. at 82, 83 S.Ct. at 1662. The Court expressly stated that its decision did not preclude Missouri from regulating such conduct in an emergency situation. Motor Coach Employees, 374 U.S. at 82, 83 S.Ct. at 1662.
 
 
 27
 Adhering to this rationale, a district court prevented New York's attorney general from enjoining nursing home employees from striking. NLRB v. New York, 436 F.Supp. at 339. After finding the state action preempted, the court stated:
 
 
 28
 While the state may not prohibit the employees from going out on strike or engaging in peaceful picketing, when it appears that the lives and health of nursing home residents are threatened, the state remains free, in the exercise of local responsibility, to take whatever reasonable steps are necessary to protect the residents from the effects of strike activity.
 
 
 29
 NLRB v. New York, 436 F.Supp. at 339. Consequently, because the Fronton Owners cannot demonstrate actual or imminent danger to the public, the state may not regulate the strike conduct by imposing a fifteen-day pre-strike notice requirement on the players.
 
 
 30
 C. Injunction Enjoining Enforcement of State Court Order
 
 
 31
 The Supreme Court has allowed the NLRB to file suit in federal district court to restrain the enforcement of a state court order which regulated conduct protected under the NLRA. See NLRB v. Nash-Finch Co., 404 U.S. 138, 141, 92 S.Ct. 373, 375, 30 L.Ed.2d 328 (1971). In Nash-Finch, the Court held that a federal court could enjoin a state court's order which restrained peaceful union picketing because the NLRA governed such conduct. The Court has reasserted this position, noting that Nash-Finch "permits a federal injunction of state court proceedings when the plaintiff in the federal court is the United States itself or a federal agency asserting 'superior federal interests.' " Mitchum v. Foster, 407 U.S. 225, 235-36, 92 S.Ct. 2151, 2158-59, 32 L.Ed.2d 705, 714 (1972).
 
 
 32
 This court has relied on the Nash-Finch decision in allowing the NLRB to obtain a federal injunction to prevent an employer from using a state court order to regulate a labor activity within the NLRB's jurisdiction. See Florida Board of Business Regulation v. NLRB, 686 F.2d at 1366 (NLRB has implied authority to obtain a federal court injunction to enjoin an employer from using a state law to regulate a labor activity within the NLRB's jurisdiction). Because the state court injunction enforcing the Florida fifteen-day notice provision interfered with an activity which the NLRA regulates, the district court properly granted injunctive relief to enjoin the state court order.
 
 CONCLUSION
 
 33
 The district court properly determined that the NLRA preempted the Division's fifteen-day notice rule. As a result, the district court did not abuse its discretion in concluding that the NLRB established a likelihood of success on the merits and the other three requirements for obtaining a preliminary injunction. Consequently, we affirm the district court's preliminary injunction which enjoins the Division and the Fronton Owners from enforcing the state court order or applying the fifteen-day notice provision to the Association or the jai alai players.
 
 
 34
 AFFIRMED.
 
 
 
 *
 Section 7E-3.003(34)(b) provides:
 (b) No permittee or licensee of any class within the jurisdiction of the Division shall individually or in combination with others take any action or plan or combine to take any action which will interrupt or prevent any pari-mutuel performance or program authorized by law unless such permittee or licensee intending such action shall first:
 
 
 [1]
 Notify in writing the Division of Pari-Mutuel Wagering and the permittee or licensees or combinations thereof to be substantially affected by such action or plan in the judgment of the noticing permittee or licensee or Director of the Division of Pari-Mutuel Wagering
 
 
 [2]
 In such notice, state the nature of the action and specify the names and addresses of the permit holders, licensees, or associations proposing to take such action to the best knowledge of the party giving such notice
 
 
 [3]
 In such written notice, specify the date and time upon which the proposed action is intended to be taken, which date shall be no earlier than 15 days and no later than 30 days from the actual delivery to the Division of the written notice required herein. Notices to others required by this rule should be by certified mail