In re HILLSBOROUGH HOLDINGS CORPORATION, et al., Debtors.

HILLSBOROUGH HOLDINGS CORPORATION, et al., Plaintiffs,

v.

The CELOTEX CORPORATION, et al., Defendants.

Bankruptcy Nos. 89–9715–8P1 through 89–9746–8P1.
Adv. Nos. 90–0003, 90–0004.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

April 13, 1990.

Don Stichter, Tampa, Fla., Michael J. Crames, P.C., New York City, for debtors.

Charles Koob, New York City, for debtors, Sp. Counsel.

Elihu Inselbuch, and Carl Kravitz, Caplin & Drysdale, New York City, Marsha G. Rydberg, Rydberg, Goldstein & Bolves, P.A., Tampa, Fla., for Asbestos claimants.

Frank Cobb, Tampa, Fla., for several trade creditors.

Marc S. Kirschner, Jones, Day, Reavis & Pogue, New York City, Paul B. O'Hearn, Jones, Day, Reavis & Pogue, Atlanta, Ga., Zala Forizs, St. Petersburg, Fla., for Official Unsecured Creditors Committee.

Ann Acker, Chapman and Cutler, Chicago, Ill., for Kemper Financial Services, Inc.

P. Kevin Castel, Cahill, Gordon & Reindel, New York City, Charles Tatelbaum, Kass, Hodges & Massari, Tampa, Fla., for Drexel Burnham Lambert, Inc.

Jeffrey Warren, Michael B. Colgan, Holland & Knight, Tampa, Fla., for Jim Walter Corp. and Celotex Corp.

Laurence Greenwald, Stroock & Stroock & Lavan, New York City, John Genovese, Stroock & Stroock & Lavan, Miami, Fla.,

for Official Committee of Bondholders Committee.

Leonard Gilbert, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa, Fla., for Kohlberg, Kravis, Roberts & Co.

Paul Bauch, Bell, Boyd & Lloyd, Chicago, Ill., for Continental Illinois Nat. Bank and Trust Co.

Marshall Reissman, Nixon and Nixon, Tampa, Fla., for Southeast Bank, N.A.

John Olson, Stearns, Weaver, Miller, Weissler, Alhadeff & Sitterson, P.A., Tampa, Fla., for Mfrs. Hanover Trust Co. and Bankers Trust Co.

Robert Glenn, Glenn, Rasmussen, Fogarty, Merryday & Russo, Tampa, Fla., for Fidelity Investments.

Michael Horan, Addison, Ketchey & Horan, P.A., Tampa, Fla., for AmeriTrust Co. Nat. Ass'n and United Bank of Denver.

James Robinson, Burr & Forman, Birmingham, Ala., for Specification Rubber Products Co., Inc.

Lynn England, Office of the United States Trustee, Tampa, Fla.

## PROPOSED FINDINGS OF FACT, CONCLUSIONS OF LAW AND RECOMMENDATION PURSUANT TO BANKRUPTCY RULE 5011 ON MOTION TO ABSTAIN

ALEXANDER L. PASKAY, Chief Judge.

THE MATTERS under consideration are raised in several not-yet-consolidated Chapter 11 cases filed by Hillsborough Holdings Corporation (HHC), the parent of Walter Industries and 30 of its subsidiaries, all of whom seek relief under Chapter 11 of the Bankruptcy Code. The immediate matters under consideration are raised in two Adversary Proceedings commenced by the Debtors, Adversary Proceedings No. 90–0003 and Adversary Proceeding No. 90–0004.

Adversary Proceeding No. 90–0003 is a Complaint for declaratory judgment filed by the Debtors. The Defendants named in this suit are The Celotex Corporation, Jim Walter Corporation (JWC), and more than 1000 individuals, among them are Joe Larned, Jr., Arthur Dugas, Claude Cimino, and Marvin W. Strother. This Complaint includes four counts. In Count I, the Debtors seek a declaration by this Court that under the applicable law, the corporate veil between JWC and Celotex may not be pierced in order to make JWC liable for the asbestos-related personal injury claims asserted against Celotex by the individual Defendants named in this Adversary Proceeding.

In Count II, the Debtors seek a declaration by this Court that under the applicable law, the transaction through which Walter Industries redeemed the shares of HHC in exchange for certain assets of JWC was not a fraudulent conveyance.

In Count III, the Debtors seek a declaration by this Court that under applicable law, neither HHC, Walter Industries, nor any of their subsidiaries or affiliates are the successors in interest (sic) to the asbestos-related personal injury claims asserted against either JWC or Celotex.

In Count IV, the Debtors seek a declaration by this Court that under applicable law, neither HHC, Walter Industries, nor any of their subsidiaries or affiliates are liable for the asbestos-related liabilities of either JWC or Celotex.

Adversary Proceeding No. 90–0004 is entitled "Complaint to Extend the Automatic Stay". This Complaint was also filed by the Debtors and named the same Defendants who are named in Adversary Proceeding No. 90–0003, that is, JWC, Celotex, and more than 1,000 individual asbestos-related personal injury claimants, including Claude Cimino, Arthur Dugas, Joe Larned, Jr., and Marvin W. Strother. This Complaint also named unidentified Defendants described as "John Doe, 1—400" [sic], which appears to refer to unidentified parties who may or may not have already filed asbestos-related personal injury actions, and who also may or will attempt to pierce the corporate veil between Celotex and JWC.

In their one-count Complaint, the Debtors seek two things. First, they seek a

preliminary injunction staying, restraining and enjoining Defendants, or anyone acting on their behalf or in concert with them, from continuing a lawsuit styled *Larned et al. v. Kohlberg, Kravis, Roberts & Co., et al*, No. B–13354, filed in Beaumont, Jefferson County, Texas (*Larned* action). Second, they seek a permanent injunction barring the Defendants, or anyone acting on their behalf or in concert with them, from commencing or prosecuting any action against certain non-Debtors named in the *Larned* action, which alleges the unfairness, illegality or impropriety of any transfers of property to any Debtors from JWC.

The Motions under consideration filed in Adversary Proceeding No. 90–0003 are the following:

1) A Motion for Preliminary Injunction filed by the Debtors;

2) A Motion to Intervene in Declaratory Relief Action filed by Drexel Burnham Lambert Group, Inc., and Drexel Burnham Lambert, Inc., (Drexel);

3) A Motion to Abstain from deciding, or in the alternative, to stay the declaratory relief action filed by Dugas, Cimino, Hillberg & Strother, some of the Defendants named in the two Adversary Proceedings filed by the Debtors;

4) A Motion to Abstain from deciding or, in the alternative, to stay the declaratory relief action filed by certain asbestos-related personal injury claimants listed in Schedule A, which includes over 600 individually named parties;

5) A Motion to Abstain filed by certain additional asbestos-related personal injury claimants.

The Motion under consideration in Adversary Proceeding No. 90–0004 is a Motion to Dismiss the Complaint filed by Defendants, Larned, Dugas, Cimino, Hillberg & Strother.

In order to put the issues raised by the Motions in proper focus, a brief recitation of the undisputed facts should be helpful.

Mr. James Walter incorporated JWC, a Tampa-based residential construction company, in 1955. In 1964, JWC acquired Celotex, which operated its building products business out of Chicago. In 1972, Celotex acquired 89% of the outstanding shares of a corporation known as Panacon Corporation (Panacon), and ultimately merged with Panacon. As a result, Celotex acquired all assets of Panacon and its subsidiaries. Celotex, Panacon, and its subsidiaries had engaged in selling products containing asbestos for many years before the 1971 acquisition. By late 1970s, a large number of personal injury claims had been filed against Celotex, the vast majority of which were based on alleged exposure to asbestos products sold by Panacon and its subsidiaries prior to 1972.

By 1987, JWC, had acquired over 30 operating subsidiaries, including Celotex. Ultimately through several highly complex transactions, JWC was the target of a corporate takeover by a leveraged buy-out (LBO). As the result of these transactions, an entity known as Walter Industries emerged and acquired the stock of most of the subsidiaries of JWC. Thereafter, a newly formed corporation known as HHC, one of the Debtors, became the parent of Walter Industries which, in turn, became the parent of the 30 wholly-owned subsidiaries, the other Debtors involved in these Chapter 11 cases.

The LBO transaction was orchestrated by Kohlberg Kravis Roberts & Co. (KKR) and by Drexel Burnham Lambert Group, Inc., (Drexel), a brokerage house that apparently underwrote the junk bond issue, the proceeds of which were used, at least in part, to consummate the LBO transaction. The LBO transaction did not involve JWC or Celotex or its affiliates.

During 1989, several hundred asbestos-related personal injury claimants filed suits in several federal district and state courts seeking to pierce the corporate veil between Celotex and JWC and, if successful, to impose on JWC Celotex's liability to the personal injury claimants. If these claimants succeed in establishing that JWC is liable to the asbestos-related personal injury property damage claimants, they will then seek to attack the LBO transaction as a fraudulent transfer and ultimately reach the assets of the Debtors, either by com-

pletely dismembering the Debtors or by subjecting the assets of the Debtors to the satisfaction of their claims. These actions were filed and are still pending in several United States District Courts and State Courts, in addition to the actions pending in the States of Texas, Washington, Illinois and West Virginia.

There are two lawsuits in this group which are directly involved at present before this Court. The first, filed in the United States District Court in the Eastern District of Texas, Beaumont Division, is styled *Cimino v. Raymark Indus., Inc.*, No. B–86–0456 (E.D.Tex.) The other is the *Larned* action.

The *Larned* action is a class action filed by a group of attorneys who claim to represent the class of asbestos-related personal injury claimants. However, it must be noted that the class has not yet been certified. The Plaintiffs in the *Larned* action sued not only HHC and Walter Industries, but also JWC and Celotex. They also sued numerous other individuals, including key officers and directors of HHC and Walter Industries, none of whom are Debtors at this time protected by the automatic stay.

Most of the non-Debtor Defendants in the *Larned* action have a contractual right for indemnification by the Debtors in the event that the non-Debtor Defendants are held to be liable to the asbestos-related personal injury and property damage claimants. The Defendants in the *Larned* action, other than Celotex and two individuals, challenged the jurisdiction of a Texas Court, but on October 19, 1989, the state court overruled the challenge and found it had jurisdiction.

On January 2, 1990, JWC removed the *Larned* action to the United States District Court, which in turn referred the suit to the Bankruptcy Court in Beaumont, Texas. The Debtors and JWC promptly filed a Motion to Transfer the Venue of the *Larned* action to this Court, and the Plaintiffs filed a Motion to remand the case back to the Texas State Court. Due to the intervention of these Chapter 11 cases, these motions have not yet been considered by the Bankruptcy Court and the District Court in Texas.

These are basically the salient facts which form the background of these two closely related Adversary Proceedings and the Motions filed in these, in which the Debtors seek declaratory relief determining that they are not liable to the asbestos-related personal injury and property damage claimants, and injunctive relief prohibiting the Plaintiffs in the *Larned* and *Cimino* actions from proceeding any further.

*Motion to Abstain (Adv. No. 90–0003)*

Counsel for the asbestos-related personal injury claimants urge that by virtue of 28 U.S.C. § 1334(c)(2), the Bankruptcy Court must abstain from considering the declaratory suit filed by the Debtors. In the alternative, they urge that even if the mandatory abstention provision does not apply, the Bankruptcy Court still should use the optional abstention provision set forth in 28 U.S.C. § 1334(c)(1) and abstain. In support of the Motion to Abstain, the movants contend that the *Larned* and *Cimino* actions are based on pure state law, the actions were filed prior to the commencement of these Chapter 11 cases, and the issues raised can be adjudicated without delay in the Texas Courts.

In support of the optional abstention, they urge that abstention would be the best use of judicial resources; that the Bankruptcy Court is unable to adjudicate the issues because the Defendants are entitled to a jury trial and the Bankruptcy Court cannot, as a matter of constitutional law, conduct jury trials; that the abstention can only have a positive effect on the administration of the Debtors' estates; that Texas is the more appropriate forum because all the parties are in Texas; and that the judge in Texas already has expertise in this case. In addition, they urge that even if this Court declines to recommend that the District Court grant the Motion to Abstain, the declaratory judgment action should be stayed pending the resolution of the suits pending in Texas.

Considering these contentions seriatim, it should be noted at the outset that as part

of the restructuring of the jurisdictional scheme, by the *Bankruptcy Amendments and Federal Judgeship Act of 1984* (BAFJA), Pub.L. 98–353, Congress vested all the original but not exclusive jurisdiction arising in, arising under, or related to a case under Chapter 11 in the respective United States District Courts. 28 U.S.C. § 1334(a), (b). In order to assure that this jurisdiction does not extend automatically to all civil proceedings, unlike the previous version of the jurisdictional grant repealed by BAFJA, 28 U.S.C. § 1471(a), (b), Congress enacted two abstention provisions: one mandatory, 28 U.S.C. § 1334(c)(2), and one optional or discretionary, 28 U.S.C. § 1334(c)(1).

■ It is now generally accepted that both abstention provisions should be narrowly construed and the abstention should be exercised sparingly and cautiously. *In re Charter Co.*, 82 B.R. 602, 603 (Bankr.M.D.Fla.1988); *In re Climate Control Engineers, Inc.*, 51 B.R. 359, 363 (Bankr.M.D.Fla.1985); *Ionosphere Clubs, Inc. v. IAM*, 108 B.R. 951, 952 (Bankr.S.D.N.Y.1989).

In discussing the abstention provision, the remarks of Senator Dennis DeConcini are enlightening. In opposing a broader abstention provision urged by some, he noted that a broader abstention provision would be extremely harmful to the effective operation of the bankruptcy system, and it would threaten the recoveries of any creditors and the jobs of every employee involved in the bankruptcy case. It is clear, the Senator noted, that Bankruptcy Courts have ruled on state law issues for over 100 years, and the abstention provision should not be invoked just because some of the issues are based on state law. Senator DeConcini urged that the Bankruptcy Courts must retain the traditional and long-established undisputed power to resolve the claims against the estate, even if they are based on state law, if the bankruptcy system is to survive and function effectively. Otherwise, he predicted that the Bankruptcy Court would be nothing more than a basket in which claims based on state court judgments were dropped, and the judgments would not be worth the paper they are written on because all of the estate's assets would have been exhausted by the cost of litigation in multiple forums.

■ Based on the foregoing legislative history, it cannot be gainsaid that Congress ever intended that the mandatory abstention provision would apply to "core" proceedings as that term is defined by 28 U.S.C. § 157(b)(2). *In re Turner*, 70 B.R. 486, 489 (Bankr.D.Mont.1987); *In re Harbour*, 60 B.R. 370 (W.D.Va.1985); *Matter of Hughes–Bechtol, Inc.*, 107 B.R. 552 (Bkrtcy.S.D.Ohio 1989); *In re Allegheny, Inc.*, 68 B.R. 183, 192 (Bankr.W.D.Pa.1986); *Accord In re Tidwell Industries*, 87 B.R. 345, 347–350 (Bankr.E.D.Pa.1988). Keeping in mind the foregoing general comments, it is ·evident that the initial inquiry must be addressed to whether each adversary proceeding is a "core" proceeding or merely a related non-core proceeding.

The statute dealing with jurisdiction and allocation of jurisdiction between the District Court and the Bankruptcy Court defines "core" proceeding to some extent by 28 U.S.C. § 157(b)(2) which provides a non-exclusive list of examples of "core" proceedings, three of which are relevant in the present instance:

(A) matters concerning the administration of the estate;

(B) allowance or disallowance of claims against the estate ...

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship ...

Before considering the applicability of any of these subsections, it should be pointed out that Congress expressly provided in 28 U.S.C. § 157(b)(3) that the determination that a proceeding is not a "core" proceeding shall not be made solely on the basis that the resolution of the issues involved may be effected by state law.

■ Turning to the specific examples stated above, this Court is satisfied that the example set forth in (O) has been narrowly construed by numerous courts. The 5th Circuit Court of Appeals in *Matter of Wood*, 825 F.2d 90 (5th Cir.1987), concluded

that to give a broad reading to 28 U.S.C. § 157(b)(2)(O) would place the entire range of proceedings within the Bankruptcy Court jurisdiction being core proceedings a result would be contrary to the ostensible purpose of BAFJA and would run afoul of the view expressed by the plurality in *Northern Pipeline Construction Co. v. Marathon Pipeline Company and United States*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), a decision by the Supreme Court which prompted the enactment of BAFJA, *see also Piombo Corp. v. Castlerock Properties*, 781 F.2d 159, 163 (9th Cir.1986); *In re Satelco, Inc.*, 58 B.R. 781, 788 (Bankr.N.D.Tex.1986); *In re American Energy, Inc.*, 50 B.R. 175, 178 (Bankr.D.N.D.1985).

■ The example set forth in § 157(b)(2)(B) is equally inapplicable since it is clear that a declaratory relief action is not, at this time, an integral part of the allowance or disallowance of claims actually filed against the estate. *Cf. Matter of Wood, supra.* This is so because neither the Plaintiffs in the *Larned* or in the *Cimino* actions filed proofs of claims against any of the Debtors. While one may urge with some persuasion that the complaint filed by the Debtors is merely an anticipatory action by the Debtors to object to claims which have not yet been filed, this Court declines to place such proceedings within the definition of the term "core" as set forth in 28 U.S.C. § 157(b)(2)(B). This leaves for consideration the application of § 157(b)(2)(A), which describes "core" proceeding matters which concern the administration of the estate.

■ The Debtors in their complaint filed in Adversary Proceeding No. 90–0003 basically seek a determination that the Debtors are not liable to the asbestos-related personal injury and property damage claimants because under applicable law, the corporate veil cannot be pierced between Celotex and JWC. To view this part of the complaint in isolation, one would be compelled to admit that it is a proceeding based on pure state law involving two non-Debtors and cannot properly qualify as a matter concerning administration of the estate.

See, 28 U.S.C. § 157(b)(2)(A). However, the veil piercing action is merely a preliminary step toward the real thrust of the attack by the asbestos-related personal injury and property damage claimants, which is the fraudulent transfer claim asserted by them challenging the LBO. This second step in their attack is without a doubt an action designed either to dismember these Debtors by reverting all their assets back to JWC, or to establish an allowable claim directly against these Debtors, a claim superior in rank to the holders of the junk bonds sold to the public in conjunction with the LBO.

There is hardly any doubt that the timely resolution of the issues raised by the Debtors' complaint in Adversary Proceeding No. 90–0003 is the heart of the entire reorganization process. A prompt resolution of the issues raised in one central forum is imperative, and without it there can not be any effective reorganization of the affairs of these Debtors. It is evident that if more than 1000 asbestos-related personal injury and property damage claimants are permitted to litigate the ultimate liability of these Debtors through the eventual and not yet to be determined liability of Celotex and, in turn, of JWC, this would have a disastrous effect on the fate of these Debtors. To permit these veil piercing and fraudulent transfer actions to be litigated in the various forums all over the country would effectively paralyze the entire reorganization process. This is so because this would impose a tremendous cost and involve a very substantial amount of the Debtors' time. While it is true that the cost may not be initially born by these Debtors, ultimately they will have to pay the cost of litigation, at least to the extent that they must defend the fraudulent transfer claims asserted by the asbestos-related personal injury and property damage claimants. Moreover, it is possible that if these litigations are permitted to continue in the various state and federal courts, there might very well produce conflicting results on both issues.

In sum this Court is satisfied that the issues raised in Adversary Proceeding No.

90–0003 involve matters concerning the administration of the estates of these Debtors. Therefore, this is a "core" proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and, accordingly, it is not subject to the mandatory abstention provision of 28 U.S.C. § 1334(c)(2).

In urging an abstention, counsels' reliance on *Matter of Wood, supra,* and *In re Marill Alarm Systems, Inc.,* 81 B.R. 119 (S.D.Fla.1987), is misplaced. The 5th Circuit in *Wood* noted that in determining whether the proceeding is "core" or non-core, the Court must look at both the form and substance of a proceeding. *Wood* (citing *In re World Financial Services Center, Inc.,* 64 B.R. 980 (Bankr.S.D.Cal.1986)). The resolution of the issues in *Wood* had no central role in the reorganization process, and involved nothing more than an action to recover corporate stock and monies which the individual Debtors allegedly appropriated from a corporation owned by the Debtor. The resolution of these issues was not essential to the reorganization process, unlike the veil piercing and fraudulent transfer actions involved in the present instance.

The Defendants also rely on *In re Marill Alarm Systems, Inc., supra.* *Marill Alarm* involved a suit to recover money damages based on an alleged conspiracy to charge and collect usurious interest in violation of Florida Statutes § 687.071. The Plaintiffs also sought recovery pursuant to the Florida RICO Statute, §§ 895.01 *et seq.* and also sought a determination of the validity and priority of some liens and some fraudulent conveyances under the Bankruptcy Code and under the Florida's fraudulent transfer statute (as made applicable through 11 U.S.C. § 544(b)). Thus, *Marill Alarm* involved an attempt to recover monies by the creditors, and the action was not central to the entire reorganization process. For these reasons, this Court is not persuaded that these two cases cited furnish any support for the Defendants' proposition that Adversary Proceeding No. 90–0003 is not a "core" proceeding, but possibly related, and that this Court must abstain pursuant to 28 U.S.C. § 1334(c)(2).

■ Assuming without admitting that the suit for declaratory relief filed by the Debtors is in fact a non-core, related civil proceeding which may be subject to the mandatory abstention called for by 28 U.S.C. § 1334(c)(2), it is clear that the *Larned* and *Cimino* Plaintiffs missed the mark because mandatory abstention applies only if it involves a civil proceeding which could not have been commenced in the Courts of the United States absent jurisdiction based on Title 11. It is true that the *Larned* action could not have been maintained in the U.S. District Court due to the alleged lack of complete diversity. This is not the case with regard to the *Cimino* action which was, in fact, originally filed in the United States District Court for the Eastern District of Texas. The moving parties also failed to demonstrate the additional requirement for mandatory abstention, which is that the civil proceeding could be timely adjudicated. As noted earlier, the *Larned* action was filed as a class action and the class has not yet been certified. There is no showing that this could be accomplished in the near future in light of the number of potential Plaintiffs involved. Neither is there any showing that even if a class is ultimately certified after the opt-out provisions are complied with, the *Larned* or the *Cimino* actions could be completed with finality in the near future.

Based on the foregoing, this Court is satisfied that the *Larned* action could not be ready for trial within 120 days, and the proposition that the trial should not last any longer than two to four weeks, provided the Defendants do not obstruct reasonable discovery, is totally unrealistic in light of the fact that this is a major class action suit still in an embryonic stage. It is true that at least one veil piercing lawsuit, *Waller v. H.K. Porter, Inc.,* C.A. No. B–89–00586–CA, had been scheduled for trial on February 26, 1990. Because of the intervention of the bankruptcy and the filing of this adversary proceeding by the Debtors, as far as it appears, no further action has been taken in the *Waller* suit. Notwithstanding this fact, this Court is satisfied that while the *Waller* suit might possibly

proceed to trial at least against the non-Debtors in the injunctive relief sought is denied in the near future. However in light of the ultimate conclusion by this Court that all the issues relating to the liability of JWC for the liability of Celotex and, in turn, the right of the asbestos-related personal injury and property damage claimants to reach the assets of these Debtors, should be tried in one central forum, granting the Motion to Abstain would not be appropriate.

■ Having determined that the mandatory abstention provision is inapplicable, this leaves for consideration the question whether or not should the Motion to Abstain be granted on the basis 28 U.S.C. § 1334(c)(1). This Section provides that the District Court may abstain from hearing a particular proceeding "in the interest of justice, or in the interest of comity with state courts or respect for State law." It should be noted that this abstention provision should only apply if the interests of the entities seeking abstention will be promoted by abstention and when they override the court's presumptive duty to hear and resolve matters which are properly before it. *Gorse v. Long Neck, Ltd.,* 107 B.R. 479, 482 (Bankr.D.Del.1989).

■ The factors which are commonly used by courts in considering the discretionary abstention provision include the following:

1) The court's duty to decide matters properly before it;

2) the effect abstention will have on the efficient and economic administration of the Debtor's estate, *Allen County Bank & Trust v. Valvmatic Int'l Corp,* 51 B.R. 578, 582 (N.D.Ind.1985); *Ionosphere Clubs, supra; In re Finley,* 62 B.R. 361, 366 (Bankr.N.D.Ga.1986); *Gorse, supra;*

3) The possibility of inconsistent results stemming from abstention, *Allen Co., supra; In re Finley, supra;*

4) The risk of the duplicative and uneconomic use of judicial resources, *Thompson v. Magnolia Petroleum Co.,* 309 U.S. 478, 483, 60 S.Ct. 628, 630, 84 L.Ed. 876 (1940); *Allen Co., supra;*

5) Whether the issues involve difficult or unsettled questions of state law that would be better addressed by a state court, *Ionosphere Clubs, supra; In re Finley, supra;*

6) Comity considerations, *Allen Co., supra; Gorse, supra;*

7) The prejudice, if any, to non-Debtor parties of having the action proceed in federal Court, *Allen Co., supra; Ionosphere Clubs, supra; Gorse, supra.*

■ There is hardly any doubt, and the asbestos-related personal injury and property damage claimants must concede, that the resolution of the piercing and fraudulent transfer issues are central to this entire reorganization process. As noted earlier, it is without a doubt that to permit these actions to proceed in several different federal and state forums would have a certain disastrous effect on this entire reorganization process. *In re Consolidated Lewis Investment Corp.—Ltd. Partnership,* 78 B.R. 469, 476 (Bankr.M.D.La.1987).

Abstention of the declaratory judgment action, or even staying the declaratory judgment action, would waste judicial resources. Litigating the identical issues in a variety of other forums would properly create a chaotic situation by producing inconsistent litigations.

The issues of comity or deference to state courts to resolve these issues is equally inapplicable. The vast majority of the state courts where piercing claims are pending would not ever be called upon to apply their own law to the issues raised by the Debtors. The veil piercing issue is clearly governed by either the law of Delaware or Florida, not Texas, since Celotex is a Delaware corporation and JWC is a Florida corporation. Thus, there is no rhyme or reason why this Court should defer to a Texas Court construing the laws of Florida or Delaware. It is to be noted that in the action of *Jim Walter Corp. v. Allen,* C.A. No. 10974, slip op. at 10–11, 1990 WL 3899 (Del. Ch. Jan. 12, 1990), the Chancery Court in Delaware already noted that the question of JWC's possible liability based on the liability of Celotex should be limited to only one jurisdiction.

The premise that the veil piercing issue must be resolved with reference to the laws of the state where the corporation is incorporated is supported by the "internal affairs" doctrine. This doctrine is embodied in §§ 302 and 307 of the Restatement (Second) of Conflicts of Law, and provides that the law of the state of incorporation governs whether a corporation's form should be disregarded. *See CTS Corp. v. Dynamics Corp. of America,* 481 U.S. 69, 91–93, 107 S.Ct. 1637, 1650–52, 95 L.Ed.2d 67 (1987) (a state of incorporation has a substantial interest in "promoting stable relationships among parties involved in the corporations it charters" and in "preventing the corporate form from becoming a shield for unfair business dealing"); *United States v. Dean Van Lines, Inc.,* 531 F.2d 289, 291 (5th Cir.1976) ("Those who utilize the laws of this state [Florida] in order to do business in the corporate form have every right to rely on the rules of law which protect them against personal liability...."). Thus, depending on whether one views the corporate veil being challenged as belonging to Celotex or Jim Walter Corporation, either Delaware or Florida law would be controlling and not the law of Texas.

The proposition urged by the asbestos-related personal injury and property damage claimants that they have a right to a jury trial—which this Court is incapable of conducting because of constitutional limitations on its power—is also without merit. First of all, notwithstanding the decision of the Supreme Court in *Granfinanciera S.A. v. Nordberg,* 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), the question of whether or not a non-Article III judge may conduct a jury trial has not yet been resolved at the highest level since the Supreme Court declined to rule on this issue. It should also be noted that since *Granfinanciera,* the Second Court of Appeals in the case of *In re Ben Cooper, Inc.,* 896 F.2d 1394 (2d Cir.1990), ruled that there is no constitutional prohibition for a non-Article III judge to preside over a jury trial. In addition, if the District Court, upon recommendation by this Court, denies the Motion to Abstain, the District Court may always decide to withdraw the reference sua sponte and try the issues involved in Adversary Proceeding No. 90–0003 with a jury if there is a right to a trial by jury. Moreover, this Court is not convinced that there is a right to a trial by jury on a veil piercing action since such action has traditionally been an equity procedure and always has been handled on the equity side of the Chancery Courts. *JWC v. Allen, supra.* For the reasons stated, this Court is satisfied that neither 28 U.S.C. § 1334(c)(1) nor (c)(2) applies.

Having considered the various contentions of the parties, this Court is satisfied that the Motion to Abstain in Adversary Proceeding No. 90–0003 is not warranted in toto. This Court is satisfied that it is appropriate to recommend to the District Court to deny the Motion to Abstain from considering the issues raised in Adversary Proceeding No. 90–0003 concerning the liabilities, if any, of the Debtors, of the corporate officers of the Debtors (James W. Walter, Joe B. Cordell and James O. Alston), and the liability of JWC as a result of the liability of Celotex to the asbestos-related personal injury and property damage claimants. It is also appropriate to recommend to the District Court to grant the Motion to Abstain concerning the liabilities, if any, of Kohlberg Kravis Roberts & Co., KKR Associates, Henry R. Kravis, George R. Roberts, Paul E. Raether, Michael T. Tokarz, Perry Golkin, John B. Carter, Jr. and Gene M. Woodfin to the asbestos-related personal injury and property damage claimants.

In light of the fact that The Drexel Burnham Lambert Group, Inc., and Drexel Burnham Lambert, Inc., are also Debtors involved in a pending Chapter 11 case in the Southern District of New York, it is appropriate to recommend to the District Court to grant the Motion to Abstain concerning their liabilities, if any, provided, however, that any claims sought to be asserted against these two Chapter 11 Debtors shall be presented only to the Bankruptcy Court in the Southern District of New York.

*Motion for Preliminary Injunction*
*(Adv. No. 90–0003)*

 This leaves for consideration the Motion for Preliminary Injunction which seeks protection for the non-Debtor executives of these Debtors. Injunctive relief is an extraordinary remedy which is not granted lightly and clearly the party seeking relief has the burden of showing the following:

1. A substantial likelihood of success on the merits;

2. a substantial threat that the movant will suffer irreparable harm;

3. the potential injury the movant may suffer without an injunction is greater than the potential injury the opposing party would suffer if the injunction were issued; and

4. the preliminary injunction will not adversely impact the public interest.

*N.L.R.B. v. State of Fla. Dept. of Business Regulation*, 868 F.2d 391, 393 (11th Cir. 1989); *National Distrib. Co. v. James B. Beam Distilling Co.*, 845 F.2d 307, 309 (11th Cir.1988); *In re Provincetown Boston Airline, Inc.*, 52 B.R. 620 at 624–25 (Bankr.M.D.Fla.1985).

 There is some support for the proposition, however, that the Debtor who seeks injunctive relief under § 105 does not have to meet each element generally required for a preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure. *See In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir.1985); *In re Johns–Manville Corp.*, 91 B.R. 225, 227–28 (Bankr.S.D.N.Y.1988).

In the context of a Chapter 11 case, the "likelihood of success on the merits" really means the probability of a successful plan of reorganization. *In re Kasual Kreation, Inc.*, 54 B.R. 915 (Bankr.S.D.Fla.1985); *In re Family Health Services*, 105 B.R. 937, 944 (Bankr.C.D.Cal.1989); *In re Public Service Co. of New Hampshire*, 98 B.R. 120, 124 (Bankr.D.N.H.1989); *In re Richmond Paramedical Service, Inc.* 94 B.R. 881, 884 (Bankr.E.D.Va.1988), *aff'd*, No. 88–0558–R, slip op., 1989 WL 149144 (E.D.Va. May 17, 1989); *In re Otero Mills, Inc.*, 25 B.R. 1018, 1021 (Bankr.N.M.1982).

There is nothing in this record to indicate that these Debtors are not viable business entities incapable of achieving a successful reorganization which is fair and equitable to all. Their success is, however, dependent on a speedy, favorable determination of the issues raised by the Debtors in Adversary Proceeding No. 90–0003. Thus, until those matters are resolved, it would be premature to conclude at this time that this reorganization process is doomed and that there is no legal justification for granting the injunctive relief sought. While it is true that it is a moving party's burden to show that they are likely to prevail on the merits, this is also a difficult issue to resolve at this stage of the reorganization process. The record, at this time, is simply too scant to determine the merits of the veil piercing actions and the possibility that the asbestos-related personal injury and property damage claimants will ultimately be able to reach the assets of these Debtors. At this stage, it is appropriate and proper to assume that these Debtors have no liability for any asbestos-related personal injury and property damages, as it appears from this record that these Debtors never manufactured, sold, or distributed any products containing asbestos. As noted earlier, most of Celotex's potential asbestos liability arises from the pre–1972 activities of Panacon, which Celotex acquired by merger in June 1972.

Concerning the requirement that the moving party would be irreparably harmed if the injunctive relief is not granted, this Court is satisfied that to permit the Plaintiffs in *Larned*, *Cimino*, and other actions to pursue their veil piercing and fraudulent conveyance claims around the country would place a tremendous burden on the Debtors and on the executives of the Debtors, and would surely hamper or possibly jeopardize their ability to devote their full time and energy to a successful reorganization.

This Court is further satisfied that if the injunction is granted, the potential injury to the asbestos-related personal injury and property damage claimants is minimal or nonexistent. This is clear when one consid-

ers what is and what is not involved before this Court.

The two Adversary Proceedings filed in this Court do not, and may never, have any direct relationship to the personal injury suits filed by the asbestos-related personal injury and property damage claimants in several Federal and State Courts. The preliminary injunction, if issued, would have no effect on their right to prosecute the underlying asbestos-related personal injury or property damage claims. Nor does it have any impact on their ability to obtain a judgement against Celotex, and ultimately to seek to recover upon those judgments. Thus, the injunction issued by this Court would not have any negative impact on the underlying asbestos claims against Celotex, and certainly would not bar any recovery against Celotex. It appears that Celotex, so far, has been able to pay all judgments.

Finally, there is no question that public policy would strongly support the issuance of an injunction. The remedial features of the Bankruptcy Code, especially the provisions dealing with reorganization under Chapter 11, have been recognized repeatedly as serving a very strong public interest. As noted in the House Report:

> The purpose of a business reorganization case, unlike a liquidation case, is to restructure a business's finances so that it may continue to operate, provide its employees with jobs, pay its creditors, and produce a return for its stockholders ... If the business can extend or reduce its debts, it often can be returned to a viable state. It is more economically efficient to reorganize than to liquidate, because it preserves jobs and assets.

*H.R.Rep. No. 595, 95th Cong., 2d Sess. 220, reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6179.*

These Debtors operate several viable businesses and employ more than 8600 people. They have combined assets and liabilities in excess of $3 billion, and had an annual net revenues for fiscal 1989 of approximately $1.2 billion. Considering the size of these economic interests represented by these Debtors, there is hardly any question that if there was ever a case just like the case of *In re Baldwin United Corp., supra,* this is it.

Concerning the claims asserted by the Plaintiffs in the *Larned* and *Cimino* actions against these Debtors, there is no need to grant injunctive relief because the Debtors are fully protected by the automatic stay imposed by § 362 of the Bankruptcy Code. This leaves for consideration the Motion for Preliminary Injunction, which seeks to protect the executives of the Debtor (James W. Walter, Joe B. Cordell and James O. Alston), JWC, Celotex, the remaining non-Debtors (Kohlberg Kravis Roberts & Co., KKR Associates, Henry R. Kravis, George R. Roberts, Paul E. Raether, Michael T. Tokarz, Perry Golkin) and The Drexel Burnham Lambert Group, Inc., and Drexel Burnham Lambert, Inc.

Considering the Motion for Preliminary Injunction concerning these non-Debtors, this Court is satisfied that it is appropriate to grant the Motion for Preliminary Injunction at this time to protect JWC, Celotex, James W. Walter, Joe B. Cordell and James O. Alston, for the reasons stated earlier. However, it would not be appropriate to grant the same protection for the other non-Debtor Defendants involved in the *Larned* and *Cimino* actions, that is Kohlberg Kravis Roberts & Co., KKR Associates, Henry R. Kravis, George R. Roberts, Paul E. Raether, Michael T. Tokarz, and Perry Golkin.

Because Drexel Burnham Lambert Group, Inc., and Drexel Burnham Group, Inc., are now Debtors protected by the automatic stay, they are no longer in need of any injunctive relief. Therefore, the Motion for Preliminary Injunction as related to these entities should be denied as moot. Any claims regarding their liabilities should be addressed to the Bankruptcy Court in the Southern District of New York where the *Drexel* cases are pending.

*Motion to Intervene (Adv. No. 90–0003)*

█ The Motion to Intervene filed by Drexel Burnham Lambert Group, Inc., and Drexel Burnham Lambert, Inc., in Adversary Proceeding No. 90–0003 was filed before they sought protection under Chapter

11 of the Bankruptcy Code. However, they are now fully protected by the automatic stay imposed by § 362 of the Bankruptcy Code, and no longer need to represent their interest in this Adversary Proceeding. Accordingly, this Court is satisfied that the Motion to Intervene is rendered moot.

*Motion to Dismiss (Adv. No. 90–0004)*

This leaves for consideration the Motion to Dismiss Adversary Proceeding No. 90–0004. Adversary Proceeding No. 90–0004 is commenced by a Complaint entitled "Complaint To Extend the Automatic Stay in Adversary Proceeding No. 90–0004". In this Adversary Proceeding, the Debtors seek a preliminary or, alternatively, a permanent injunction prohibiting the asbestos-related personal injury and property damage claimants from proceeding any further with the *Larned* and *Cimino* actions against the Debtors and non-Debtors.

It should be noted at the outset that this Court is not aware of any provision in the Bankruptcy Code or in the Bankruptcy Rules which provides or authorizes the "extension" of the automatic stay in cases where the automatic stay does not apply. The automatic stay can only be extended in the context of a stay litigation where this Court finds that the moving party either failed to show "cause" or that it lacked adequate protection, § 362(d)(1), or in the alternative, that the Debtor has no equity in the property involved and the property is not needed for effective reorganization, § 362(d)(2). The Debtors must concede that the protective provision of the automatic stay does not apply to non-Debtors. Thus, the only possible protection the non-Debtors may receive from this Court would be through an injunction issued by this Court pursuant to § 105 of the Bankruptcy Code which, inter alia, authorizes the Court to issue such orders, processes, or judgments that are necessary or appropriate to carry out the provisions of Title 11.

 In this connection, it should be emphasized that § 105 of the Bankruptcy Code is not an independent source of power, but merely a grant of power to be used in addition to an already-existing power granted by the Code. There is hardly any question that a suit filed against the non-Debtors is a non-core proceeding. This leads to the question of whether or not it is appropriate to use the injunctive power granted by § 105 of the Code to protect non-Debtors. This can only be answered with the finding first that the action against the non-Debtors is "related" to a Title 11 case.

 For a civil proceeding to be related to bankruptcy such that jurisdiction exists to entertain the matter in federal courts, it need not necessarily be against a Debtor or against Debtor's property; an action is related to bankruptcy if the outcome could alter Debtor's rights, liability, options, or freedom of action, either positively or negatively, and which in any way impacts upon handling and administration of the bankrupt estate. *Pacor Inc. v. Higgins*, 743 F.2d 984 (Pa.1984).

Thus, it has been generally recognized that the injunctive power granted by § 105 may be warranted if it is necessary to protect the integrity of the reorganization process. *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 1003, 1008 (4th Cir.), *cert. denied*, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986); *In re Baldwin–United Corp. Litig.*, 765 F.2d 343, 348 (2d Cir. 1985); *In re Chateaugay Corp., Reomar, Inc.*, 93 B.R. 26, 29 (S.D.N.Y.1988).

 There is no doubt that in certain instances, claims established against the non-Debtors would permit them, in turn, to assert a claim against the Debtors under the contract of indemnity. Based on this proposition, it is the Debtors' contention that this Court's power to enjoin prosecution of suits is not dependent on a showing that the claimants seek to directly impose liability on the Debtors at this time. *A.H. Robins, supra; In re Johns–Manville Corp.*, 801 F.2d 60, 67 (2nd Cir.1986).

The difficulty with the broad and blanket protection sought against the non-Debtors is that while it is true that non-Debtors may be protected during the pendency of a Chapter 11, *A.H. Robins, supra; Johns–*

*Manville, supra; Baldwin, supra,* several of these non-Debtor Defendants are not actively involved in the reorganization process. They are not executives of these Debtors who have to devote their full time and energy to work toward the reorganization of these Debtors. For instance, KKR, Drexel, and their principals, who are co-Defendants in the *Larned* and *Cimino* actions, are not involved in the day-to-day affairs of the Debtors. Instead, their involvement in the reorganization process at this time appears to be peripheral or nonexistent. In this connection, it should be noted that Drexel is now also a Debtor seeking relief under Chapter 11 in the Southern District of New York and thus is no longer in need of any injunctive protection from this Court.

In sum, to the extent that the claims asserted against these non-Debtors in the *Larned* and *Cimino* actions are based on civil conspiracy, unfair dealings, or some other theory, it would not be proper to use the injunctive power of this Court to protect these parties at this time. The fact that some of the non-Debtors may have a contractual right to be indemnified ultimately by the Debtors if they are found to be liable to the Plaintiffs in the *Larned* and *Cimino* actions is not significant at this time.

In light of this Court's proposed findings and conclusions which recommend to the District Court to deny the Motion to Abstain from considering the issues in Adversary No. 90–0003, except as they relate to the liability of Kohlberg Kravis Roberts & Co.; KKR Associates Henry R. Kravis, George R. Roberts, Paul E. Raether, Michael T. Tokarz; Drexel Burnham Lambert Group, Inc. and Drexel Burnham Lambert, Inc.; Perry Golkin, John B. Carter, Jr. and Gene M. Woodfin, the non-Debtor Defendants in the *Larned* action, it would be inappropriate to grant the injunctive relief sought in Adversary Proceeding No. 90–0003. Inasmuch as Drexel Burnham Lambert Group, Inc., and Drexel Burnham Lambert, Inc. are now Debtors in a pending Chapter 11 case and protected by the automatic stay, they no longer need injunctive relief from this Court, and therefore,

the Adversary Proceeding No. 90–0004 as it relates to them shall be dismissed. This Court reserves ruling on the Motion to Dismiss filed by the Debtors, and defers the consideration of the legal sufficiency of the allegations in the Complaint. This Court will reconsider the same if the District Court accepts this recommendation and rules that the Motion to Abstain is denied and that this Court is the proper forum to consider the sufficiency of the pleading against all Defendants except Kohlberg Kravis Roberts & Co., KKR Associates, Henry R. Kravis, George R. Roberts, Paul E. Raether, Michael T. Tokarz, Perry Golkin, John B. Carter, Jr. and Gene M. Woodfin to their entitlement to relief sought under Adversary Proceeding No. 90–0004.

A separate Order will be entered on the Motion to Dismiss in Adversary Proceeding No. 90–0004 and separate Orders will be entered on the Motion for Preliminary Injunction and on the Motion to Intervene in Adversary Proceeding No. 90–0003 in accordance with the foregoing.