**HILLSBOROUGH HOLDINGS CORPORATION, et al., Plaintiffs,**

v.

**The CELOTEX CORPORATION, et al., Defendants.**

**No. 90–163–MISC–15.**

United States District Court, M.D. Florida, Tampa Division.

July 11, 1990.

Don Mason Stichter, Stichter & Riedel, P.A., Tampa, Fla., Michael J. Crames, Levin & Weintraub, Crames & Edelman, and Charles E. Koob, Simpson, Thacher & Bartlett, New York City, for plaintiffs.

Zala L. Forizs, Blasingame, Forizs & Smiljanich, P.A., St. Petersburg, Fla., for creditor.

Michael Byrley Colgan, Holland & Knight, Jeffrey Wayne Warren, Bush, Ross, Gardner, Warren & Rudy, P.A., Marsha Griffin Rydberg, Rydberg, Goldstein &

Bolves, Tampa, Fla., Elihu Inselbuch, New York City, and Carl S. Kravitz, Washington, D.C., for defendants.

Michael Byrley Colgan, Holland & Knight, Don Mason Stichter, Stichter & Riedel, P.A., Jeffrey Wayne Warren, Tampa, Fla., Michael J. Crames, Levin & Weintraub, Crames & Edelman, and Charles E. Koob, Simpson, Thacher & Bartlett, New York City, for debtor.

## ORDER

CASTAGNA, District Judge.

This matter is before the Court on the objections filed by certain Asbestos Defendants to the Bankruptcy Court's April 13, 1990 Proposed Findings of Fact, Conclusions of Law and Recommendation Pursuant to Bankruptcy Rule 5011 on Motion to Abstain (Recommendation), 123 B.R. 1004, and the respective responses of the Debtors Hillsborough Holdings Corporation (HHC) and others, the adversary proceeding defendants Celotex Corporation and Jim Walter Corporation (JWC), and the Creditor's Committee.

The Asbestos Defendants challenge the Bankruptcy Court's denial of their motion to abstain from consideration of certain claims set forth in adversary proceeding No. 90–0003. In the adversary proceeding, the Debtors seek a declaration that the corporate veil between JWC and Celotex may not be pierced to make JWC liable for any successful asbestos-related personal injury claims, and a declaration that the transaction in which Walter Industries exchanged shares for assets of JWC was not a fraudulent conveyance. These claims mirror the claims in an action filed by the Asbestos Defendants and currently pending in a Texas state court since July, 1989.

In its Recommendation, the Bankruptcy Court found abstention pursuant to 28 U.S.C. § 1334(c)(2) inappropriate because the issues raised in the adversary proceeding involve matters concerning the administration of the Debtors' estates, and are thus "core" proceedings pursuant to 28 U.S.C. § 157(b)(2)(A). The Bankruptcy Court determined that the veil piercing ac-

tion and fraudulent conveyance claims of the Asbestos Defendants were essentially attempts to either send HHC's assets back to JWC, or to establish claims against the Debtors. Since an accurate accounting of the Debtors' assets is necessary to the reorganization process, the Bankruptcy Court held that it is the proper forum to decide these issues.

The Asbestos Defendants urge this Court to reject the Bankruptcy Court's Recommendation and enter an order directing the Bankruptcy Court to abstain from hearing the adversary claims. The Asbestos Defendants argue that abstention is mandatory because the veil piercing and fraudulent conveyance claims are not core, and raise state law issues that are already being litigated in Texas.

■ To prevail on their motion to abstain, the Asbestos Defendants must meet the requirements for mandatory abstention under 28 U.S.C. § 1334(c)(2), which provides in part:

> (2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction …

Each of these requirements must be satisfied for mandatory abstention to apply. *In re Climate Control Engineers, Inc.*, 51 B.R. 359, 362 (Bankr.M.D.Fla.1985).

■ In this case, the primary issue for this Court is whether the Bankruptcy Court was correct in its determination that the claims raised in the adversary proceeding are "core" issues and thus mandatory abstention is inappropriate. Title 28 U.S.C. § 157(b)(2)(A)–(O) sets forth a noninclusive list of core proceedings. The Bankruptcy Court found that the fraudulent conveyance and veil piercing claims are core proceedings pursuant to

§ 157(b)(2)(A)—matters concerning the administration of the estate.

Any determination of whether or not a bankruptcy proceeding is core must be analyzed pursuant to the dictates of the United States Supreme Court decision *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). The *Marathon* case involved a breach of contract claim that arose prior to the debtor's filing for Chapter 11. The debtor initiated the action after filing for Chapter 11, thus conferring, under the 1978 Bankruptcy Act, jurisdiction over the claim on the bankruptcy court. The Supreme Court held that Congress could not permit bankruptcy courts to adjudicate "private right" claims such as state tort and contract claims simply because the claims may involve the debtors. *Id.* at 71, 102 S.Ct. at 2871. According to the Court, bankruptcy courts were restricted to proceedings "at the core of federal bankruptcy power" such as the restructuring of the debtor-creditor relationship. *Id.*

As a result, the Supreme Court declared the Bankruptcy Reform Act of 1978 unconstitutional because it expanded bankruptcy jurisdiction to claims too far removed from traditional bankruptcy proceedings to allow Article I bankruptcy judges to adjudicate them. *Id.* The "core/non-core" distinction set forth in the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. 98–353, is the Congressional response to the *Marathon* prohibition.

Although the Eleventh Circuit has not yet interpreted the meaning of "core" proceeding, all parties in this action have filed extensive legal memoranda demonstrating that other circuit courts have adopted differing views concerning whether or not a proceeding is core pursuant to the 1984 Act. The First and Second Circuits found that the 1984 Act's legislative history revealed that Congress intended that core proceedings be interpreted broadly to include most of the claims filed in bankruptcy court, and "*Marathon*-type" cases to be of a limited nature, specifically claims arising prior to the Chapter 11 filing. *In Re Ben Cooper, Inc.*, 896 F.2d 1394, 1398–1400

(2d Cir.1990); *In Re Arnold Print Works,* 815 F.2d 165, 168 (1st Cir.1987). In *Cooper* and *Arnold,* the courts found that contract claims arising *after* the filing of a Chapter 11 petitions are core proceedings because they affect the administration of the assets of the estate. *Cooper* at 1399; *Arnold* at 169–70. (emphasis added).

Facing slightly different facts, the Ninth Circuit in *In Re Castlerock,* 781 F.2d 159 (9th Cir.1986), considered whether the bankruptcy court had jurisdiction over state contract law counterclaims filed by the debtor in his Chapter 11 proceeding. The counterclaims were in response to a state court contract action that had been filed prior to the Chapter 11 proceeding, and was stayed pursuant to the automatic bankruptcy stay. The court found that because they were filed prior to the bankruptcy proceeding, the counterclaims did not fall within § 157(b)(2)(C)—counterclaims by the estate against persons filing claims against the estate. *Id.* at 161. The court went on to hold that if state law contract claims do not fall under the specific categories of § 157(b)(2)(B)–(N), they are not core proceedings even if arguably they fit within the two "catch-all" sections § 157(b)(2)(A) and (O). *Id.* at 162. The court based this holding on a belief that to interpret the catch-all sections broadly would violate *Marathon. Id.*

In a more recent Ninth Circuit decision, *In re Mankin,* 823 F.2d 1296, 1300 (9th Cir.1987), the court determined that an action by a bankruptcy trustee to recover assets allegedly fraudulently transferred was a core proceeding pursuant to § 157(b)(2)(H)—"proceedings to determine, avoid, or recover fraudulent conveyances...." This holding does not conflict with *Castlerock,* since *Mankin* involved a post-petition action which fell within an enumerated type of core proceeding. Indeed, in a footnote the panel distinguishes the *Castlerock* facts since they involved a decision as to whether or not a claim fell within one of the catch-all provisions of § 157. *Id.* at 1301 n. 3. In contrast, the *Mankin* facts involved a specific category of core proceedings that had legislative his-

tory indicating that it should be broadly construed. *Id.* at 1301–2.

Taking an even more restrictive view of a core proceeding, the Fifth Circuit in *Matter of Wood,* 825 F.2d 90, 96 (5th Cir.1987), found that the language in *Marathon* suggested that bankruptcy judges may adjudicate only those claims that invoke the "peculiar rights and powers of bankruptcy," and that actions that could proceed in another court in the absence of bankruptcy are not core proceedings. Essentially, the *Wood* test for determining a core proceeding is whether the cause of action implicates a substantive right created by Title 11. *Id.* at 97.

The Second Circuit in *Cooper* found the *Castlerock* and *Wood* characterizations of core proceedings overly restrictive, and declined to follow them. *Cooper* at 1400. However, as the *Cooper* court recognized, the *Castlerock* facts are distinguishable because the contract existed pre-Chapter 11. *Id.* As to *Wood,* the *Cooper* court found that even following its test, a post-petition contract dispute does invoke a substantive right provided by Title 11.

One district court decision in this circuit, *In Re Marill Alarm Systems, Inc.,* 81 B.R. 119 (S.D.Fla.1987), relied on the *Wood* test in determining whether a claim alleging a scheme to collect usurious interest was a core proceeding. The court found that pursuant to *Wood,* this claim did not arise under Title 11, and thus was not a core proceeding. The court stated that the only possible basis for core status was § 157(b)(2)(O)—the claim affected the liquidation of the assets of the estate. However, the *Marill* court found that to interpret this "catch-all" provision broadly would enable almost any claim to be considered core, and ignore the dictates of *Marathon.*

The Bankruptcy Court found that neither *Wood* nor *Marill* were applicable to the instant case because they did not involve claims "central to the reorganization process." However, although the particular facts before the *Wood, Marill,* and other courts discussed above may all be distin-

guishable from the facts before this Court, the distinctions do not lessen the instructive value of each of those decisions. This Court finds that all of the above discussed cases provide insight into an analysis of whether a proceeding is core pursuant to § 157(b).

For example, one factor important in the *Cooper, Arnold* and *Castlerock* decisions was the timing of the dispute. In those cases the disputes were filed after the Chapter 11 proceeding, thus rendering them more likely to be considered core. Indeed, the *Cooper* court stated specifically that it read *Marathon* to apply to claims arising pre-Chapter 11. *Cooper*, 896 F.2d at 1400. Of the decisions cited, only *Wood* classified a post-Chapter 11 claim as non-core.

Another factor considered by the *Mankin, Wood,* and *Marill* courts was whether the suit could have been brought regardless of the bankruptcy. In *Mankin,* the court distinguishes *Marathon* by stating that in *Marathon* the suit could have been brought whether or not a party was bankrupt. *Mankin*, 823 F.2d at 1307. The Fifth Circuit in *Wood* uses this factor as the basis for its test and found that since the plaintiff's suit was not based on a right created by federal bankruptcy law, it was not core. *Wood*, 825 F.2d at 97.

Finally, although § 157(b)(3) specifically cautions that a determination as to whether the proceeding is core should not rest solely on the effect of state law on the proceeding, most of the above decisions consider the claim's relation to state law. Indeed, the Supreme Court's own hindsight comment regarding the *Marathon* holding appears to consider the state law implications of the proceeding. In *Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568, 584, 105 S.Ct. 3325, 3334, 87 L.Ed.2d 409 (1985), a case involving the constitutionality of the Environmental Protection Agency's arbitration provisions, the Court referred to *Marathon* as "establish[ing] only that Congress may not vest in a non-Article III court the power to adjudicate, render final judgment, and issue binding orders in a traditional contract action arising under state law, without consent of the litigants, and subject only to ordinary appellate review."

An application of the factors described above to the case before this Court reveals the following. The veil piercing and fraudulent conveyance suits were filed in state and federal courts well before the Chapter 11 proceeding. It follows then that these suits do not involve claims based on rights created by Chapter 11. Pursuant to *Wood, Marill,* and *Mankin,* these factors could lead the Court to conclude that the proceeding is not core.

Such a conclusion must be tempered, however, by the Supreme Court's comment in *Thomas* that *Marathon* applied to "traditional contract actions arising under state law," and *Marathon*'s own holding distinguishing between purely private actions and actions involving the traditional bankruptcy function of restructuring debtor/creditor relations. The *Marathon* court found specifically that "the restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power, must be distinguished from the adjudication of state-created private rights, such as the right to recover contract damages that is at issue in this case." *Marathon*, 458 U.S. at 71, 102 S.Ct. at 2871.

The Court concludes that the veil piercing and fraudulent conveyance claims in this case do not share the purely state law attributes of, for example, the claim of usury pursuant to Florida statutes found to be non-core by the district court in *Marill.* Thus, they appear to fall outside the specific concerns of *Marathon.* And while these claims may not arise under Chapter 11, their resolution appears essential to the ability of the Bankruptcy Court to perform a Chapter 11 duty—the restructuring of debtor/creditor relations. Even the *Wood* court qualified its test by noting that a court must look at both the "form and substance of a proceeding" in determining whether or not it is core. *Wood*, 825 F.2d at 97. It appears to this Court that the substance of the veil piercing and fraudulent conveyance claims concerns the administration of the estate, and thus must be

termed core proceedings pursuant to § 157(b)(2)(A).

In order to prevail on their motion for abstention, the Asbestos Defendants must meet each requirement of § 1334(c)(2). Since the Court finds that the adversary proceedings are core, the Asbestos Defendants have not met their burden as to one of the requirements, and the Court need not consider the arguments regarding the other requirements. Nor does the Court find that the Asbestos Defendants have met their burden of demonstrating that discretionary abstention is appropriate. It is therefore

ORDERED:

1. The Asbestos Defendants motion to strike the Debtors' response as untimely (D–24) is denied.

2. The Bankruptcy Court's April 13, 1990 Proposed Findings of Fact, Conclusions of Law and Recommendation Pursuant to Bankruptcy Rule 5011 on Motion to Abstain are AFFIRMED.

DONE AND ORDERED.