**Alexander MacLEOD, by and through his mother and next friend, Eileen P. MacLEOD, Plaintiff,**

v.

**DALKON SHIELD CLAIMANTS TRUST, Defendant.**

**Civil No. AMD 97–447.**

United States District Court,
D. Maryland.

June 30, 1997.

H. Robert Erwin, Jr., Pretl and Erwin, Baltimore, MD, for Plaintiff.

Paul F. Strain, Mark D. Maneche, Venable, Baetjer & Howard, Baltimore, MD, for Defendant.

## MEMORANDUM

DAVIS, District Judge.

Plaintiff Alexander MacLeod, through his mother, Eileen P. MacLeod, filed a wrongful life action against defendant Dalkon Shield Claimants Trust ("Trust").[1] A resident of Anne Arundel County, Maryland, MacLeod originally filed this action in the Circuit Court for Baltimore City, Maryland; the Trust timely removed the case pursuant to 28 U.S.C. §§ 1452(a)[2] and 1334(b).[3]

MacLeod alleges that A.H. Robins, the manufacturer of the Dalkon Shield intrauterine device, made false representations that the Dalkon Shield was "thoroughly tested, medically safe, and 99% effective" against pregnancy, when in fact A.H. Robins had knowledge that use of the Dalkon Shield carried a risk of danger and a high risk of pregnancy to its user. MacLeod's mother allegedly relied on these false representations, and as a consequence of her reliance, MacLeod was conceived and, on July 28, 1973, born with "multiple congenital defects, anomalies, and complications, including left hemiparesis with multiple craniofacial abnormalities, including a single central maxillary incisor, aplasia of the right nostril, and absence of the right eye." Amended Compl. ¶¶ 21–22. MacLeod does not allege that the Dalkon Shield *caused* his congenital birth defects; rather, he alleges that the Dalkon Shield carried a higher risk of pregnancy than what A.H. Robins represented, and as a consequence of the high risk of pregnancy, MacLeod was born in his afflicted condition. On this basis, MacLeod brings claims for fraud and strict products liability.

MacLeod has requested that I abstain and has moved to remand. The Trust has

1. In 1985, A.H. Robins filed a voluntary petition for bankruptcy reorganization under Title 11 of the United States Code. In 1989, the Dalkon Shield Claimants Trust was created by A.H. Robins's Sixth Amended Bankruptcy Plan of Reorganization. The Trust is responsible for all claims brought against A.H. Robins based on use of the Dalkon Shield.

2. Section 1452(a) provides in part that "[a] party may remove any claim or cause of action in a civil action ... to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title."

3. Section 1334(b) provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."

moved to dismiss.[4] A hearing has been held and the motions are ripe for determination. The alleged injuries occurred while Mac-Leod's mother was a resident of Louisiana, where MacLeod was born. Thus, the parties agree that the substantive law of Louisiana law is controlling and that, in the absence of clearly controlling authority from the Supreme Court of Louisiana, my task is to predict as best I can what the Supreme Court of Louisiana would adopt as a rule of decision. For the reasons that follow, I shall deny MacLeod's motion to abstain and remand, and grant the Trust's motion to dismiss.

### (i)

■■■ MacLeod urges this Court to invoke discretionary abstention and remand this case to the Circuit Court for Baltimore City. As 28 U.S.C. § 1334(c)(1) provides, "[n]othing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." Courts consider several factors in deciding whether to abstain under § 1334(c)(1), including:

(1) efficiency in the administration of the debtor's estate;

(2) the extent to which state law issues predominate over bankruptcy issues;

(3) whether the issues involve difficult or unsettled questions of state law that would be better addressed by a state court;

(4) the presence of a related proceeding commenced in state court;

(5) the existence of a jurisdictional basis other than § 1334;

(6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

(7) the substance rather than form of an asserted "core" proceeding;

(8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court;

(9) the burden of the federal court's docket;

(10) the likelihood that the commencement of the proceeding in federal court involves forum shopping by one of the parties;

(11) the existence of a right to a jury trial; and

(12) whether non-debtor parties are involved in the proceeding.

*In re Eastport Assos.*, 935 F.2d 1071, 1075–76 (9th Cir.1991), *quoted in Waysack v. Dalkon Shield Claimants Trust*, No. C 94–04409 CW (N.D.Cal. Apr. 4, 1995); *In re Hillsborough Holdings Corp.*, 123 B.R. 1004, 1013 (Bankr. M.D.Fla.1990), *aff'd sub nom. Hillsborough Holdings Corp. v. Celotex Corp.*, 123 B.R. 1018 (M.D.Fla.1990).

■■■ In support of his argument for abstention, MacLeod cites to several California and Oregon district court cases in which courts abstained from hearing Dalkon Shield cases and remanded them to the state courts in which they were originally filed. *See Nieves v. Dalkon Shield Claimants Trust,*

---

4. A complaint should not be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Motions to dismiss for failure to state a claim are "granted sparingly and with caution in order to make certain that plaintiff is not improperly denied a right to have his claim adjudicated on the merits." 5A WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE, CIVIL 2D § 1349 at 192–93 (1990). Rule 8(a)(2) requires only that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). A claimant is not required

to "set out in detail the facts upon which he bases his claim" so long as the claim "will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47, 78 S.Ct. at 103. Moreover, all well-pleaded factual allegations are assumed to be true and are viewed in the light most favorable to the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421–22, 89 S.Ct. 1843, 1848–49, 23 L.Ed.2d 404 (1969). Only when the factual allegations in support of a claim are not well-pleaded (e.g., when they are "functionally illegible" or "baldly conclusory," *Shuster v. Oppelman*, 962 F.Supp. 394, 395 (S.D.N.Y.1997)) should they not be accepted as true and the claim dismissed.

No. 91–20493 (N.D.Cal. Dec. 20, 1991); *Stanbury v. Dalkon Shield Claimants Trust,* No. CV92–1576–IH (C.D.Cal. May 28, 1992); *Waysack supra; Holcomb v. Dalkon Shield Claimants Trust,* No. C 95–0336 SBA (N.D.Cal. July 10, 1995); *MacLeod v. Dalkon Shield Claimants Trust,* No. CV–94–1079–ST (D.Or. Jan. 23, 1995). These courts considered many of the factors listed above and concluded that they weighed in favor of discretionary abstention and remand. A critical distinction between those cases and the case *sub judice,* however, is that those district courts remanded the cases to state courts in which the law of the forum would be applied, and the district courts thereby furthered the manifest institutional interest in comity among state and federal courts. Here, while the present case was filed in Maryland, Mac-Leod's claims arise under Louisiana law. Thus, the Circuit Court for Baltimore City would not apply Maryland law, but instead would be required to identify and apply Louisiana law. Where a state court is not called upon to apply its own law to a state law claim within the purview of § 1334 jurisdiction, comity is immaterial and a district court with § 1334 jurisdiction need not exercise discretionary abstention. *Hillsborough,* 123 B.R. at 1013 (denying a motion to abstain from adjudicating a state law claim involving piercing the corporate veil, where Delaware or Florida law would govern the issue but the court, if it abstained, would remand the claim to a Texas state court). For these reasons, I shall deny MacLeod's motion to abstain and remand.

### (ii)

■ MacLeod does not allege a cognizable claim for fraud under Louisiana law. The elements of a fraud claim include: "(1) a misrepresentation of a material fact, (2) made with the intent to deceive, and (3) causing justifiable reliance with resultant injury." *Abell v. Potomac Ins. Co.,* 858 F.2d 1104, 1131 n. 33 (5th Cir.1988), *cert. denied sub nom., Abell v. Wright, Lindsey & Jennings,* 492 U.S. 918, 109 S.Ct. 3242, 106 L.Ed.2d 589 (1989); *Jefferson v. Lead Indus. Ass'n,* 930 F.Supp. 241, 248 (E.D.La.1996), *aff'd,* 106 F.3d 1245 (5th Cir.1997) (relying on *Abell* to emphasize the element of justifiable

reliance in a claim for fraudulent misrepresentation); La. Civ. Code arts. 1847, 1953, 2315. A plaintiff cannot satisfy the element of justifiable reliance if he was not born at the time the defendant allegedly misrepresented a product that later caused the plaintiff injury. *See Jefferson,* 930 F.Supp. at 248 (finding the plaintiff's fraudulent misrepresentation claim "impossible" and granting the defendant's motion to dismiss in part because the plaintiff, who was not born at the time the defendant allegedly misrepresented a lead pigment product that the plaintiff later ingested, could not have relied on the alleged misrepresentation). There is no precedent from the Supreme Court of Louisiana addressing a fraud claim in the wrongful life context, and as a consequence I have no basis to conclude that the traditional elements of a fraud claim do not have to be satisfied in this case. Hence, MacLeod's fraud claim fails as a matter of law.

### (iii)

■ Similarly, MacLeod's claim for strict products liability is legally insufficient. Counsel for plaintiff conceded at the hearing that the sole strict liability theory pursued here is "failure to warn." The parties have not briefed the issue of whether MacLeod's claim is governed by the Louisiana Products Liability Act ("LPLA"), 1988 La. Acts No. 64, or the caselaw governing products liability prior to enactment of the LPLA. *See Weber v. Fidelity & Casualty Ins. Co. of New York,* 259 La. 599, 250 So.2d 754 (1971); *Halphen v. Johns–Manville Sales Corp.,* 484 So.2d 110 (La.1986). For causes of action accruing after September 1, 1988, the LPLA provides the sole basis for recovery in strict products liability against manufacturers for damage caused by their products. La. Rev. Stat. Ann. § 2800.52 (West 1997); *O'Brien v. Remington Arms Co.,* 601 So.2d 330, 333 (La.App. 2d Cir.1992), *writ denied,* 604 So.2d 1003 (La.1992). In any event, under either the LPLA or pre-LPLA caselaw, I find that no duty exists in the present case that would support a strict products liability claim based on a failure to warn theory.

Even if, as the plaintiff asserts, the Supreme Court of Louisiana would extend lia-

bility for breach of the duty owed by a physician "to a child not yet conceived but foreseeably harmed by the negligent delivery' of health care services," *Pitre v. Opelousas General Hospital,* 530 So.2d 1151, 1157–58 (La.1988), to a wrongful life action based on strict products liability, such a duty appears to be limited to warn of known or foreseeable risks of harm. Under the LPLA, "[a] product is unreasonably dangerous because an adequate warning about the product has not been provided if, at the time the product left its manufacturer's control, the product possessed a characteristic that may cause damage *and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger* to users and handlers of the product." La.Rev.Stat. Ann. § 2800.57(A)(emphasis added). A similar "conduct based" standard applies in failure to warn cases arising under pre-LPLA doctrine. *Halphen,* 484 So.2d at 113–19 (discussing difference between "pure" strict liability and "conduct based" strict liability such as failure to warn). Thus, both doctrines require the manufacturer to exercise reasonable care to warn of potential dangers associated with the use of its product.

Here, MacLeod essentially claims that A.H. Robins should have warned him about the "danger" of birth with congenital defects. The Supreme Court of Louisiana was faced with a similar issue in *Pitre.* There a surgeon's alleged negligence in performing a bilateral tubal ligation caused the birth of a child. The child's parents filed a medical malpractice suit against the surgeon and the hospital where the procedure was performed, claiming that the failed procedure, coupled with the physician's failure to inform the parents that the procedure had failed, caused the mother's pregnancy. In addition, the parents brought a wrongful life claim on behalf of the child, seeking damages for her birth with the congenital physical defect of

albinism. The court dismissed the child's claim, finding that the physician "did not owe a duty to the unconceived child to protect her from the risk of being born with albinism." 530 So.2d at 1158. Specifically, the court noted that "[t]he plaintiffs' petition does not contain any allegation that the defendant physician knew or should have known of the risk of this abnormality." *Id.*[5]

MacLeod presents a substantially similar case. Since there is no clear controlling precedent from the Supreme Court of Louisiana addressing a strict products liability claim in the context of a wrongful life action, the rule announced in *Pitre* must govern. Accordingly, A.H. Robins did not owe a duty to warn MacLeod's mother about the risk that she could give birth to a child with physical deformities, because the birth of a child with physical deformities was neither a reasonably foreseeable danger inherent in the normal use of its Dalkon Shield, as pre-LPLA caselaw requires, *cf. Halphen,* 484 So.2d at 115, nor a "danger" that could result from a "characteristic" of the Dalkon Shield, as required by the LPLA. La.Rev.Stat. Ann. § 2800.57(A). Since A.H. Robins did not owe a duty to warn against the danger of birth with congenital defects, MacLeod's strict products liability claim, based on a failure to warn theory, fails as a matter of law.

(iv)

For the reasons discussed above, I shall deny MacLeod's motion to abstain and remand, and grant the Trust's motion to dismiss the amended complaint for failure to state a claim upon which relief may be granted.[6] A separate order follows.

### ORDER

In accordance with the foregoing Memorandum, it is this 30th day of June, 1997, by the United States District Court for the District of Maryland, ORDERED

---

5. Because the court was not completely certain that albinism "cannot be easily predicted or foreseen by a treating physician," the dismissal was provisional, with leave for the child to amend her petition within thirty days. 530 So.2d at 1158.

6. Unlike this court, the United States Court of Appeals for the Fourth Circuit has authority,

pursuant to La.Rev.Stat. Ann. § 72.1(A) (West 1997), to certify a question concerning Louisiana law for which there is no "clear controlling precedent" from the Supreme Court of Louisiana. Thus, a mechanism exists whereby definitive answers to the issues presented under Louisiana law may be obtained.

(1) That the plaintiff's motion to abstain and remand this case to the Circuit Court for Baltimore City BE, and it hereby IS, DENIED; and it is further ORDERED

(2) That the defendant's motion to dismiss for failure to state a claim upon which relief may be granted BE, and it hereby IS, GRANTED; and it is further ORDERED

(3) That the amended complaint is DISMISSED WITH PREJUDICE; and it is further ORDERED

(4) That the Clerk of the Court shall CLOSE THIS CASE and MAIL a copy of this Order and the foregoing Memorandum to the attorneys of record.