# In re RAILWORKS CORPORATION, et al., Debtors.

### Henry D. Hoge, et al., Plaintiffs,

### v.

### C. William Moore, Michael R. Azarela, John G. Larkin Jeffrey J. Lewis Michael P. Rivera, and Glass & Associates, Inc.

Bankruptcy Nos. 01–6–4463 to 01–6–4485.

Adversary No. 05–01238.

United States Bankruptcy Court, D. Maryland, at Baltimore.

July 13, 2006.

532

Robert Francis Carney, Jesse Ernest Cox, Whiteford, Taylor, et al., Martin T. Fletcher, Carol L. Hoshall, Whiteford, Taylor & Preston LLP, Jason M. St. John, Saul Ewing LLP, Aryeh E. Stein, J. Daniel Vorsteg, Baltimore, MD, Troy Christopher Swanson, Cohen & Swanson, P.C., Bel Air, MD, Jeffrey L. Tarkenton, Womble, Carlyle et al., Washington, DC, for Debtors.

## MEMORANDUM AND ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS, AND REMANDING REMAINING CLAIMS

E. STEPHEN DERBY, Bankruptcy Judge.

This matter is before the Court upon the Motion to Abstain or Remand filed by Plaintiffs Henry D. Hoge, Dona P. Hoge, and the Henry D. Hoge and Dona P. Hoge Family Trust (collectively the "Plaintiffs"), the Motion to Dismiss filed by Defendants C. William Moore, Jeffrey Lewis, Michael Rivera, and Glass & Associates, and the Motion to Dismiss filed by Defendants Michael R. Azarela and John G. Larkin (referred to collectively as the "Defendants"). The motions have been fully briefed, and the Court heard oral argument on the motions. For the reasons stated herein, the Court shall grant the motions to dismiss, in part, and shall remand the remaining claims to the California Superior Court, San Mateo County.

### BACKGROUND

Pending in this court is the jointly administered Chapter 11 case of Railworks Corporation ("Railworks") and certain of its affiliates and subsidiaries, Case Nos. 01–6–4463 through 01–6–4485. The present litigation was filed in California Superior Court, San Mateo County, Civil Action No. CIV 441948, and it was removed to the United States Bankruptcy Court for the Northern District of California, by then Defendants Martin Fletcher, Esq. and Whiteford, Taylor & Preston, LLP ("Fletcher and Whiteford").[1] Pursuant to a motion filed by Fletcher and Whiteford, the California Bankruptcy Court trans-

---

1. Neither Mr. Fletcher nor Whiteford, Taylor & Preston, LLP are named as defendants in Plaintiffs' Amended Complaint.

ferred the action to the United States District Court for the District of Maryland, and it was referred to this Court.

Plaintiff's Amended Complaint was filed on June 1, 2005, after the case was removed and referred to this Court. The Amended Complaint names original defendants C. William Moore, Jeffrey Lewis, Michael Rivera, and Glass & Associates, and adds as two additional Defendants Michael R. Azarela and John G. Larkin.

The Amended Complaint seeks recovery for liability that Mr. Hoge and the other Plaintiffs incurred as guarantors on performance bonds issued by Liberty Mutual Insurance Company ("Liberty Mutual") for work conducted by HSQ Technology ("HSQ"). Amended Complaint, ¶ 62. Mr. Hoge was an officer and director of HSQ when it was acquired by Railworks in June 2000. Amended Complaint, ¶ 14. Prior to the acquisition, HSQ had contracted with the Port Authority of Allegheny County, PA ("PAAC") on a design/build contract, for which Liberty Mutual performance bonds were issued and under which the Plaintiffs indemnified Liberty Mutual for any payments made under the bonds. Amended Complaint, ¶¶ 21–24. Plaintiffs allege that certain representations were made to them by various of the Defendants as to the financial stability of Railworks at the time of the HSQ acquisition, and that later representations and promises were made by certain of the Defendants guarantying HSQ's performance of the PAAC contract, as well as assuring Plaintiffs that Railworks had the financial ability to fulfill such guaranty. Amended Complaint, ¶¶ 12, 32–35, 47.

Railworks and its subsidiaries, including HSQ, filed for bankruptcy on September 20, 2001. Amended Complaint, ¶ 26. Post-petition the PAAC contract with HSQ was rejected, Liberty Mutual paid approximately $4.5 Million to PAAC under the performance bonds, and Liberty Mutual obtained a judgment against the Plaintiffs herein in excess of $5 Million. Amended Complaint, ¶¶ 95–104. Plaintiffs seek to recover from Defendants based on the incurred liability.

The Amended Complaint alleges six separate causes of action against (1) Mr. Moore and Mr. Riveria, officers of Railworks or its affiliates; (2) Mr. Larkin and Mr. Azarela, representatives of Railworks and later Directors of HSQ; and (3) Glass and Associates and its principal or employee Mr. Lewis, financial consultants to Railworks. Glass and Associates was engaged by Railworks on a prepetition basis and was employed as Crisis Managers and Bankruptcy Consultants in Railworks bankruptcy reorganization case. Amended Complaint, ¶ 28; Order Granting Application To Employ Shaun K. Donnellan and Glass & Associates, Inc. as Crisis Managers and Bankruptcy Consultants by RailWorks Corporation, entered December 20, 2001 (p. 386). The claims are as follows:

Claim One—Breach of oral contract against C. William Moore [2]

Claim Two—Interference with contract against all Defendants

Claim Three—Intentional misrepresentation or concealment against Michael R. Azarela and John G. Larkin

Claim Four—General negligence against all Defendants

---

**2.** There may have been some confusion, at least in the mind of counsel for Mr. Azarela and Mr. Larkin, as to whether any of the other Defendants are the subject of Claim One. Plaintiffs' Counsel, on the record at the hearing held before this court, confirmed that Claim One is solely against Defendant C. William Moore. *See* Transcript of Hearing dated September 8, 2005, Case No. 05–1238–SD, at 92–93.

Claim Five—Intentional misrepresentation or concealment against all Defendants

Claim Six—Breach of California Business and Profession Code against all Defendants

Claim Seven—Indemnification against all Defendants [3]

Plaintiffs have filed a Motion to Abstain or Remand, arguing under 28 U.S.C. § 1334(c)(2) that this court must abstain from hearing this adversary proceeding, or, if not compelled to abstain should nonetheless choose to abstain under 28 U.S.C. § 1334(c)(1). Alternatively, Plaintiffs seek remand of this proceeding to the California Superior Court under 28 U.S.C. § 1452(b).

Defendants oppose abstention or remand, and have filed Motions to Dismiss. The Defendants maintain that the state law claims in this proceeding are preempted by the Railworks bankruptcy case and the Bankruptcy Code, and that they are barred by the releases and injunction contained in the Order confirming Railworks' Plan of Reorganization. Alternatively, Defendants argue notwithstanding preemption that each claim must be dismissed for failure to state a claim against the Defendants upon which relief can be granted.

## ANALYSIS

The parties have filed lengthy briefs addressing the issues of preemption, abstention and remand. Plaintiffs would have the Court rule that the causes of action are state law claims completely independent of the bankruptcy case and of the actions of the Defendants therein and wholly outside the Confirmation Order injunction. Defendants would have the Court rule that the Plaintiffs' claims attack the actions taken by the Defendants in the bankruptcy case itself, are preempted and are barred

by the Confirmation Order injunction. The court views the Confirmation Order injunction as controlling, and a bar to Plaintiffs' claims unless exceptions thereto apply.

Specifically, Claim One, Claim Four and Claim Seven will be dismissed as barred by the Confirmation Order injunction. Claim Two is an alleged intentional tort and Plaintiffs have alleged facts which, if proven, may fall outside the parameters of the Confirmation Order injunction. Similarly, Claims Three and Five are based on fraud, and Plaintiffs have alleged facts which, if proven, may fall outside the parameters of the Confirmation Order injunction. Finally, Claim Six is based on two specific California statutes for which the California Superior Court is in a better position to determine whether the Confirmation Order injunction bars prosecution thereof, based on the facts developed as to Claims Two, Three, and Five. All claims not dismissed by this Court pursuant to the Confirmation Order injunction will be remanded to the California Superior Court.

### A.

*The Plan of Reorganization and Confirmation Order Enjoin Claims One, Four and Seven, But Not Claims Two, Three, Five and Six*

The Railworks Plan of Reorganization contains a release, § 11.6(b), that enjoins the commencement of any actions against Representatives of the Debtors. The Plan defines Representative as "any and all officers, directors, attorneys, advisors and investment bankers of Railworks," and further includes three specific individuals including C.W. Moore. Debtors' Second Amended Joint Plan of Reorganization (p. 1095), § 1.135. Each of the Defendants in

---

**3.** Plaintiffs also seek exemplary damages for Claims Three, Five and Six.

this case is a Representative of the Debtors, being either an officer or director of Railworks (including subsidiaries) as in the case of Mr. Larkin, Mr. Azarela, and Mr. Riviera; are specifically named as a Representative in the Plan, as with Mr. Moore; or were advisors of Railworks, as in the case of Glass and Associates and Mr. Lewis.

The Plan enjoins actions by any claim holder against Representatives, as follows:

> To the fullest extent permitted by law, each holder of a Claim (whether or not allowed) ... shall be enjoined from commencing and continuing any Cause of Action ... and shall be deemed to release any Claim or Cause of Action arising from the beginning of time through the Effective Date ... against any Representative, acting in such capacities, in any way relating to the Debtors,[4] the Reorganization Cases or the Plan; provided, however, that the foregoing shall not operate as a waiver of or release from, and shall not enjoin the prosecution of, any Causes of Action arising out of ... acts or omissions to act involving willful misconduct, recklessness or gross negligence....

Debtors' Second Amended Joint Plan of Reorganization (p. 1095), § 11.6(b). This court's Confirmation Order made the third party injunction effective, approved Section 11 of the Plan and incorporated it by reference in the Confirmation Order. Order Confirming Debtors' Modified Second Amended Joint Plan of Reorganization (p. 1274), at ¶ 12 ("Confirmation Order Injunction"). The Confirmation Order further states Section 11, and the releases

and injunctions contained therein, is an "integral" part of the Railworks Plan. *Id.*

By its own terms, the third party injunction contained in § 11.6(b) of the Railworks' Plan is broad in nature. The plain language of the provision forecloses all claims against the Defendants herein from the beginning of time through the effective date of the Plan, covering the time period relevant to each of the claims asserted by Plaintiffs, subject to the specific exceptions as stated in § 11.6(b).

■ There is a disagreement among Courts whether plan injunctions covering non-debtor third parties are valid. *See Monarch Life Insurance Company v. Ropes & Gray*, 65 F.3d 973 (1st Cir.1995), and the case cited therein. The Court of Appeals for the Fourth Circuit has determined that the bankruptcy court may release the liabilities of non-debtors in certain circumstances, including when the plan is overwhelmingly approved and where the injunction is essential to a workable reorganization, leaving open the question of when or if Section 524(e) may apply to limit third party injunctions. *In re A.H. Robins Company, Inc.*, 880 F.2d 694, 702 (4th Cir.1989).

■ As against the instant Complaint, the injunction contained in § 11.6(b) of the Railworks' Plan is enforceable. Certain creditors, but not the Plaintiffs herein, objected to the third party injunction. These objections demonstrate that at least some creditors had contemplated the third party injunction and took issue with it. However, these objections were resolved consensually and were withdrawn prior to plan Confirmation. The Plaintiffs did not object to confirmation of the Railworks Sec-

---

4. Debtors are defined in the Plan as "Railworks and each of the Subsidiary Debtors, and collectively, Railworks and the Subsidiary Debtors, including in their capacity as debtors-in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code, and as reorganized hereunder." Debtors' Second Amended Joint Plan of Reorganization (p. 1095), § 1.46.

ond Amended Joint Plan of Reorganization nor specifically to the § 11.6(b) third party injunction contained therein, although each of the Plaintiffs has filed proofs of claim in the bankruptcy case. Under the Bankruptcy Code, a confirmed plan of reorganization acts like a contract that is binding on all of the parties, debtor and creditors alike. *In re Varat Enterprises, Inc.*, 81 F.3d 1310, 1317 (4th Cir.1996); 11 U.S.C. § 1141(a). Not only are Plaintiffs bound by the unappealed and final Confirmation Order, but they are bound as a matter of contract by the terms of the confirmed Railworks' Plan.

Plaintiffs Henry and Dona Hoge also voted affirmatively in favor of the Railworks Plan.[5] *See* Line Submitting Affidavit Of Laura Campbell Certifying the Ballots Accepting or Rejecting the Debtors' Second Amended Joint Plan of Reorganization, filed September 23, 2002 (p.1256), Exhibit A. By voting in favor of the Plan, Plaintiffs Henry and Dona Hoge consented to the terms of the Railworks Plan, including the third party injunction, and are bound thereby. *See In re Specialty Equipment Cos.*, 3 F.3d 1043, 1047 (7th Cir.1993).

The court will address the applicability of the third party injunction in the Confirmation Order separately for each claim.

■ **Claim One**—Plaintiffs assert a claim for breach of contract against Defendant Moore. Plaintiffs claim that Mr. Moore agreed to protect the Plaintiffs from liability as indemnitors of Liberty Mutual under the Liberty Mutual Bonds. Amended Complaint, First Cause of Action. Claim One has been released and Plaintiffs are enjoined from prosecuting it against Mr. Moore. It is a general breach

of contract claim. It is made against a Representative of the Debtor in his capacity as a Representative of the Debtor and relating to the Debtor Railworks. Claim One is barred by the Confirmation Order injunction and will be dismissed.

■ **Claim Four**—Plaintiffs assert a claim for general negligence against all Defendants based on correspondence sent by PAAC post-petition. Amended Complaint, Fourth Cause of Action. The correspondence was allegedly addressed to Henry Hoge and sent to counsel for HSQ. *Id.* Plaintiffs allege that the letter was a Notice of Default for the PAAC contract with right to cure. *Id.* Plaintiffs allege that the letter was circulated among the Defendants but never forwarded to Plaintiffs, who were deprived of the right to cure any default, resulting in liability to Liberty Mutual. *Id.* Claim Four has been released, and Plaintiffs are enjoined from prosecuting it against the Defendants. It is a general negligence claim based solely on post-petition conduct. It is made against Representatives of the Debtors in their capacities as Representatives of the Debtors and regarding an alleged inaction taken during the course of the bankruptcy case. Claim Four is barred by the Confirmation Order injunction, and it will be dismissed.

■ **Claim Seven**—Plaintiffs assert a claim for indemnification against all Defendants based on expenses and attorneys fees incurred by the Plaintiffs relating to the lawsuits and collection actions brought by Liberty Mutual, as well as in pursuing claims in the Railworks and HSQ bankruptcies. Claim Seven has been released, and Plaintiffs are enjoined from prosecuting it against the Defendants. Relative to

5. Henry and Dona Hoge, at all times relevant herein, were co-trustee's of Plaintiff The Henry D. Hoge and Dona P. Hoge Family Trust,

which is a revocable trust. Amended Complaint, ¶ 4 and Complaint Form 3A.

fees and expenses incurred defending Liberty Mutual's claims, it is asserted against Representatives of the Debtors in their capacities as Representatives of the Debtors stemming from actions taken during the course of the bankruptcy case. Relative to prosecution of the claims filed by Plaintiffs in the Railworks bankruptcy itself, those expenses result directly from actions taken by the Debtors during the course of the bankruptcy the bankruptcy claims of the Plaintiffs, and they arise solely because Railworks and its affiliates filed bankruptcy. Claim Seven is barred by the Confirmation Order injunction and it will be dismissed.

■ **Claim Two**—Plaintiffs assert a claim against each of the Defendants for interference with contract between Plaintiffs and Liberty Mutual. This claim involves both pre-petition and post-petition conduct of the Defendants. Plaintiffs specifically allege that the interference with contract is based on the willful misconduct, recklessness and gross negligence of the Defendants. If proven, the actions forming the basis of Claim Two are excepted from the Confirmation Order injunction.

■ **Claim Three**—Plaintiffs assert a claim against Defendants Larkin and Azarela for fraud based on alleged misrepresentations and concealment stemming from statements allegedly made by these Defendants as to Railworks' financial stability prior to Railworks acquisition of HSQ. If proven, the actions as alleged in Claim Three could be found to be willful misconduct or reckless conduct, which are excepted from the Confirmation Order injunction.

■ **Claim Five**—Plaintiffs assert a claim against all Defendants for fraud based on alleged misrepresentations and concealment stemming from representations allegedly made by Mr. Moore, and

ratified by the other defendants, that Railworks was financially sound and would guaranty HSQ's performance under the HSQ contract, when Mr. Moore had no reasonable ground to believe such representations were true. If proven, the actions as alleged in Claim Five could be found to be reckless, and thus excepted from the Confirmation Order injunction.

■ **Claim Six**—Plaintiffs assert a claim against all Defendants for breach of the California Business and Professional Code, § 17200 et seq., and California Civil Code, § 3345 et seq. Plaintiffs allege the Defendants' pattern of conduct violates the Business and Professional Code, and that the actions of the Defendants have deprived Plaintiffs of Civil Code. Amended Complaint, Sixth Claim for Relief, ¶ ¶ 2–6 and 3–6. Claim Six of the Amended Complaint specifically incorporates the allegations from each of Plaintiffs' first five causes of action in alleging a factual basis for the statutory violations alleged in Claim Six. Amended Complaint, Sixth Claim for Relief, ¶ 1–6. Thus, to the extent that Claim Six is based solely on Claim One, breach of contract, or Claim Four, general negligence, it is barred by the Confirmation Order injunction. However, to the extent its factual basis is grounded on Claims Two, Three or Five, the actions as alleged could be found to be willful misconduct or reckless conduct or gross negligence, which are excepted from the Confirmation Order injunction.

**B.**

*Claims Two, Three, Five and Six Are Not Preempted By the Bankruptcy Code*

■ Defendants argue that Plaintiffs' state law based claims are preempted by the Bankruptcy Code, citing *MSR Exploration, Ltd. v. Meridian Oil, Inc.,* 74 F.3d

910 (9th Cir.1996) and *Koffman v. Osteoimplant Technology, Inc.*, 182 B.R. 115 (D.Md.1995). In essence, Defendants maintain that Plaintiffs' claims are barred because the Bankruptcy Code has preempted the entire area of law, foreclosing state law claims against individuals who were employed by or were representatives of the Debtors.

Defendants miss a critical distinction in both *MSR* and *Koffman* which forecloses preemption. MSR instructs that all claims involving activity in the bankruptcy case, including those related to the filing of the case itself, are preempted. Thus, the *MSR* court found that the Chapter 11 debtor's state court action for malicious prosecution against a creditor for that creditor's alleged wrongful pursuit of claims in the bankruptcy case was preempted. *MSR Exploration, Ltd. v. Meridian Oil, Inc.*, 74 F.3d at 913–14. Similarly, *Koffman* teaches that state court actions related to the filing and prosecution of bankruptcy cases are preempted. Thus, the *Koffman* court found that state law counterclaims asserted by the defendant corporation related to the plaintiff/creditor's filing of an involuntary bankruptcy against the defendant, even when the bankruptcy court abstained from hearing the involuntary case, were preempted. *Koffman v. Osteoimplant Technology, Inc.*, 182 B.R. at 125–27.

Preemption has no application to the remaining claims in Plaintiffs' Amended Complaint herein. Claims Three and Five are based on alleged pre-petition promises or representations made by the various Defendants. These claims relate to the pre-petition conduct of the Defendants, whether based on fraud, misrepresentation or concealment, and are simply not preempted. Claim Two is based on the alleged intentional interference with contract by the Defendants, and as alleged is founded on gross negligence, recklessness and willful misconduct. While the timing of this claim is based on post-petition conduct, the claim is of a type specifically excepted from the Confirmation Order injunction. The factual bases for the violations of California statutes comprising Claim Six are "the allegations set forth in the first five causes of action and Attachment A." Amended Complaint, Sixth Claim for Relief, ¶ 1–6. To the extent these alleged statutory violations involve prepetition conduct of Defendants or gross negligence, recklessness, or willful misconduct, Claim six is likewise not preempted. Consequently, Defendants' motion seeking dismissal based on preemption of Plaintiffs' claims will be denied.

## C.

### *Claims Two, Three, Five and Six Shall be Remanded to the California State Court for Consideration of Defendants' Motions to Dismiss*

Plaintiffs ask this Court abstain from hearing this adversary proceeding under 28 U.S.C. § 1334 or, alternatively, to remand it to California Superior Court under 11 U.S.C. § 1452(b). The court is neither compelled to abstain under 28 U.S.C. § 1334(c)(2) nor inclined to do so under 28 U.S.C. § 1334(c)(1). Rather, the court will remand the remaining claims to the California Superior Court for further disposition.

Abstention is mandatory when: (1) the proceeding is based on a state law cause of action; (2) the proceeding relates to a Title 11 case but is not a core proceeding; (3) the proceeding could not have been commenced in federal court absent jurisdiction provided by 28 U.S.C. § 1334; and (4) the proceeding is commenced, and can be timely adjudicated, in a state forum of appropriate jurisdiction. 28 U.S.C.

§ 1334(c)(2). Here, the claims are grounded in state law and do not appear to constitute a core proceeding. *See In re Porter–Hayden Co.,* 304 B.R. 725 (Bkrtcy. D.Md.2004). However, unlike in *Porter–Hayden,* the Plaintiffs herein have filed and prosecuted proofs of claim in the Railworks bankruptcy. In fact, in their Claim Seven, they seek indemnification from the Defendants relative to prosecuting their claims in the bankruptcy case. By these actions, Plaintiffs have consented to the jurisdiction of the bankruptcy court. Moreover, while Plaintiffs argue that the proceeding could be timely adjudicated in state court, no proof has been adduced to support such a conclusion. As a result, the court has no evidence in the record to conclude that the California Court could timely adjudicate the proceeding. Plaintiffs' motion for mandatory abstention under 28 U.S.C. § 1334(c)(2) will thus be denied.

The court may abstain from this proceeding pursuant to § 1334(c)(1), which authorizes discretionary abstention if the interests of justice or if considerations of comity warrant abstention. *See* 28 U.S.C. § 1334(c)(1).[6] In this matter, the Court does not reach the issue of discretionary abstention because the Court will remand the remaining claims as further discussed below.

■■■ The Court will remand the remaining claims to California Superior Court under 28 U.S.C. § 1452(b). A claim may be remanded "on any equitable ground," i.e., as interpreted by some courts, any "appropriate" ground. *See, e.g., Things Remembered, Inc. v. Petrarca,* 516 U.S. 124, 133, 116 S.Ct. 494, 133 L.Ed.2d 461 (1995) (Ginsburg, J., concurring); *In re United States Brass Corp.,* 110 F.3d 1261, 1265 (7th Cir.1997). The factors to be considered for remand of any claim include:

(1) the effect on the efficient administration of the bankruptcy estate;

(2) the extent to which issues of state law predominate;

(3) the difficulty or unsettled nature of applicable state law;

(4) comity;

(5) the degree of relatedness or remoteness to the proceeding in the main bankruptcy case;

(6) the existence of the right to a jury trial; and

(7) prejudice to the involuntarily removed defendants.

(8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court;

(9) the burden of the federal court's docket;

(10) the likelihood that the commencement of the proceeding in federal court involves forum shopping by one of the parties;

(11) the existence of a right to a jury trial; and

(12) whether non-debtor parties are involved in the proceeding.

*In re Porter–Hayden Co.,* 304 B.R. 725 (Bkrtcy.D.Md.,2004), *citing MacLeod v. Dalkon Shield Claimants Trust,* 967 F.Supp. 856, 858 (D.Md.1997) (*quoting In re Eastport Assocs.,* 935 F.2d 1071, 1075–76 (9th Cir.1991)).

---

**6.** Numerous factors have been identified for discretionary abstention, including:

(1) efficiency in the administration of the debtor's estate;

(2) the extent to which state issues predominate over bankruptcy issues;

(3) whether the issues involve difficult or unsettled questions of state law that would be better addressed by a state court;

(4) the presence of a related proceeding commenced in state court;

(5) the existence of a jurisdictional basis other than [Section] 1334;

(6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

(7) the substance rather than form of an asserted "core" proceeding;

*In re Merry–Go–Round Enterprises, Inc.*, 222 B.R. 254, 257 (D.Md.1998), *citing Drexel Burnham Lambert Group, Inc. v. Vigilant Insurance Co.*, 130 B.R. 405, 407 (S.D.N.Y.1991). Additional factors that other courts have considered include the efficient use of judicial resources, the possibility of inconsistent results and the expertise of the court where the action originated. *In re Merry–Go–Round Enterprises, Inc.*, 222 B.R. 254, 257 (D.Md. 1998), *citing Browning v. Navarro*, 743 F.2d 1069, 1077 (5th Cir.1984).

The most relevant factors in the present case are: the extent to which issues of state law predominate, the difficulty or unsettled nature of applicable state law, comity, the expertise of the court where the action originated, the degree of relatedness or remoteness to the proceeding in the main bankruptcy case, and the existence of the right to a jury trial. The remaining claims are all based on State law, and the parties agree that California law applies. While this Court could endeavor to decipher the finer points of California law based on the claims asserted, the California Superior Court is in a better position to adjudicate these State law claims. Further, Claim Six is based on two California statutes that can best be interpreted by the California Superior Court. In fact, the California court is in a better position than this Court to determine whether Claim Six is ultimately barred by the Confirmation Order Injunction. In addition, Plaintiffs have demanded a jury and may be entitled to trial by jury on the remaining State law claims. Finally, the claims alleged are not against the Debtor or any of the Debtor's affiliates, but against non-debtor individuals who were representatives of the Debtors, mostly for their alleged pre-petition conduct. While issues related to the Defendants' actions in the bankruptcy case may arise, and necessarily causation and Plain-tiffs' alleged damages result, at least in part, from rejection of the PAAC contract and liability to Liberty Mutual stemming therefrom, the relationship of the claims at issue appears more remote to the Railworks Bankruptcy Case than related to it.

The remaining factors for remand are either not applicable or do not weigh strongly against remand. This proceeding will have little if any effect on the efficient administration of the bankruptcy case. It is an action against non-debtors for their alleged intentional torts and fraud, and should not delay ongoing administration of the bankruptcy case. There is little if any prejudice in the matter being heard in California Superior Court as opposed to the United States Bankruptcy Court for the District of Maryland, and the use of judicial resources should be roughly equivalent regardless where the matter is heard. Finally, after dismissal of the claims as provided herein, there should be little possibility of a result which will be inconsistent with the confirmed Railworks' Plan and Confirmation Order. For all these reasons, the court will remand Claims Two, Three, Five, and Six to the California Superior Court for proceedings.

Therefore, it is, by the United States Bankruptcy Court for the District of Maryland,

ORDERED, that Claims One, Four and Seven in the Amended Complaint are Dismissed, with prejudice; and it is further

ORDERED, that Claims Two, Three, Five, and Six in the Amended Complaint are REMANDED to California Superior Court, San Mateo County, Civil Action No. CIV 441948, for consideration of Defendants' Motions to Dismiss and further proceedings; and it is further

ORDERED, that the Clerk of Court send a certified copy of this Memorandum and Order together with a certified copy of

the docket entries in this matter to the California Superior Court, San Mateo County, Civil Action No. CIV 441948.